ANDOVER CONSULTANTS, INC. & another[1] *vs.* CITY OF
LAWRENCE & another.[2]

Essex.   May 19, 1980. — June 30, 1980.

Present: BROWN, GREANEY, & PERRETTA, JJ.

*Statute,* Construction.   *Municipal Corporations,* Contracts.   *Words,*
"Public works."

A contract for the preparation of tax maps for a city's board of assessors
was not subject to the competitive bidding provisions of G. L. c. 30,
§ 39M.   [157-161]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 20, 1979.

The case was heard by *Linscott,* J., on a motion to dis-
miss.

*Michael A. Gerstein* for the plaintiffs.

*Edward J. Grimley, Jr.,* City Solicitor, & *Robert J.
O'Sullivan,* Assistant City Solicitor, for the defendants, sub-
mitted a brief.

GREANEY, J.   On February 2, 1979, the city of Lawrence
advertised for sealed bids on a contract for the preparation
of tax maps for its board of assessors.   G. L. c. 40, § 4, thir-
teenth par. The project appears to have involved certain re-
quired work, including "ground control and photography,
manuscript preparation from photography, aero triangula-
tion, block bridging, calculations, research, platting of
boundaries, final drafting of maps, data card production
and other reproduction," as well as optional work involving
preparation of "Massachusetts coordinates for each lot,

---

[1] Merrimack Engineering Services, Inc.

[2] The city's board of assessors.

[location of] building designation symbol[s] on each lot, [provision for a] stereo reader for the use of the city [with] filing system, [and] maintenance after the first year." The plaintiffs, two corporations acting together in a joint venture, submitted a total bid of $178,950 for both aspects of the contract. The board of assessors, based on "cost, the in-house capability of the respective bidders, and compliance with the specifications," recommended to the mayor and city council that the contract be awarded to a Maine firm. The city council authorized the mayor to enter a contract with that firm for a price of $184,450. The plaintiffs brought suit seeking to invalidate the contract and to recover damages on the ground that they were entitled to the award of the contract as the lowest responsible and eligible bidder under the provisions of G. L. c. 30, § 39M(a), as amended through St. 1977, c. 970, § 1.[3] A Superior Court judge allowed the defendants' motion to dismiss the complaint for failure to state a claim under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). The plaintiffs have appealed from the judgment dismissing their action. There was no error.

The parties are in agreement on the essential facts outlined above. On these facts, the sole legal question addressed to the judge below and to us is whether the award of this contract was subject to the competitive bidding provisions of G. L. c. 30, § 39M, which requires that contracts for the "construction, reconstruction, alteration, remodeling or re-

---

[3] That statute provides in relevant part: "Every contract for the construction, reconstruction, alteration, remodeling or repair of any public work, or for the purchase of any material, as hereinafter defined, by the commonwealth, or political subdivision thereof, or by any county, city, town, district, or housing authority, and estimated by the awarding authority to cost more than five thousand dollars in the case of the commonwealth, or political subdivision thereof, and more than two thousand dollars in the case of any other such awarding authority, shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids publicly opened and read by such awarding authority forthwith upon expiration of the time for the filing thereof; provided, however, that such awarding authority may reject any and all bids, if it is in the public interest so to do."

pair of any public work" be awarded to the lowest responsible and eligible bidder. In contending that the contract is subject to the statute, the plaintiffs focus their attention exclusively on the term "public work" in the first sentence of the statute and base their argument in part on an abstract lexical definition of the term which is not conclusive on the question, nor helpful to their position. Black's Law Dictionary 1781 (4th ed. rev. 1968).[4] See now Black's Law Dictionary 1440 (5th ed. 1979). The defendants, on the other hand, have cited numerous cases from other jurisdictions which hold that municipal contracts for personal services requiring special skills or abilities are not subject to competitive bidding laws. See generally, 10 McQuillin, Municipal Corporations § 29.35 (3d rev. ed. 1966). None of the cited cases appear to be based on a statute bearing

---

[4] The plaintiffs' reliance as stated in their brief is on that part of the definition of "public works" in Black's Law Dictionary which reads as follows:

"Works, whether of construction or adaptation, undertaken and carried out by the national, state, or municipal authorities, and designed to subserve some purpose of public necessity, use, or convenience."

From that definition they seem to argue that any project involving a public purpose is a "public work." The quoted definition, however, although accurate enough, is only a part of the definition given in Black, bereft of its context. The quoted language appears as a subdivision of the word "Works," which, in so far as material, is defined as "a building, structure, or erection of any kind *upon land*" (emphasis supplied). Black's Law Dictionary 1781 (4th ed. rev. 1968). The language quoted by the plaintiffs follows, under the subheading "Public Works." It is obvious, that the first of the words quoted, "works," restricts the subsequent langauge to "a building, structure or erection . . . upon land." See now Black's Law Dictionary 1440 (5th ed. 1979). Maps hardly fit that definition. Similarly, Webster defines "public works" as "*fixed* works (as schools, highways, docks) constructed for public use or enjoyment . . . government sponsored public *improvements* (as parts or playgrounds)" (emphasis supplied). Webster's Third New Intl. Dictionary 1836 (1971). Thus, both dictionary definitions restrict the term to things built on land, and those definitions are entitled to weight in construing the term. See G. L. c. 4, § 6, Third; *Moy* v. *Jack Madden Ford Sales, Inc.*, 4 Mass. App. Ct. 102, 105 (1976). Cf. *Commonwealth* v. *W. Barrington Co.*, 5 Mass. App. Ct. 416, 418-419 (1977).

any close resemblance to G. L. c. 30, § 39M. See *Commonwealth* v. *W. Barrington, Inc.*, 5 Mass. App. Ct. 416, 419 (1977). We think that a better reasoned answer to the question can be obtained by examining the history and language of § 39M and considering the statutory framework in which it appears.

In context, § 39M applies only to contracts for the "construction, reconstruction, alteration, remodeling or repair of any public work." That section was inserted by St. 1963, c. 842, § 1, which was entitled "An Act to require that all contracts for *construction* and for materials be awarded to the lowest responsible and eligible bidder, and to assure full competition in the taking of bids for *such contracts*" (emphasis supplied). A bill underlying that act, which was introduced under virtually the same title, initially used the term "construction work" rather than "public work" and referred in one of its clauses to the "architect" for the public agency inviting the bids. See 1963 Senate Doc. No. 563. Section 39M also requires competitive bidding on contracts for the purchase of any "material." That term as used in the statute is defined in paragraph (*e*) as "any article, assembly, system, or any component part thereof"; and it "must be interpreted as referring only to materials used in the construction, alteration, or repair of any public work." *Gosselin's Dairy, Inc.* v. *School Comm. of Holyoke*, 348 Mass. 793 (1965). Section 39M also requires contracts written thereunder to provide for the substitution of an "item equal to that named or described in the . . . specifications," i.e., "it is at least equal in quality, durability, appearance, strength and design" to the named item or "will perform at least equally the function imposed by the general design for the public work being contracted for or the material being purchased." *Id.* at (*b*)(1) and (*b*)(2). The last sentence of paragraph (*b*) of § 39M requires that material specifications for public work contracts provide for "each item . . . a minimum of three named brands of material or a description of material which can be met by a minimum of three manufacturers or producers." Section 39N, which applies

to all contracts subject to § 39M, makes provision for contract price adjustments when "the actual subsurface or latent physical conditions encountered at the site differ substantially or materially from those shown on the plans or indicated in the contract documents." In addition to § 39N, several other provisions of c. 30, §§ 39A-39P, dealing with various rights and obligations of public contractors, employ the term "public works" with regard to projects involving the construction, repair, alteration or improvement of "public ways [and] airports" (§§ 39A and 39B); and "public ways, including bridges and other highway structures, sewers and water mains" (§ 39G). See also § 39H dealing with the "construction . . . of a public way" and § 39I concerning the "construction . . . of any public building."

The foregoing establishes to our satisfaction that § 39M is designed to obtain the lowest price that competition among reasonable bidders can secure for contracts involving the actual physical "construction" (including reconstruction, alteration, maintenance, remodeling or repair) of public buildings and improvements on land owned by the Commonwealth or one of its subdivisions, and contracts for the materials that typically go into such construction projects. Acceptance of the plaintiff's interpretation of the statute — that any undertaking of any kind for a public purpose is a "public work" — would require us to blind ourselves to the entire statutory framework of c. 30, §§ 39A through 39P, just discussed, and would necessitate casting aside as surplusage the words "construction, reconstruction, alteration, remodeling or repair" in the first sentence of § 39M. Their interpretation would also render largely meaningless the references throughout §§ 39A through 39P to matters commonly associated with building and construction projects such as the hiring of dump trucks, the need for architects and engineers to oversee the work, the requirement of security bonds, the procedures for prompt payment of subcontractors and materialmen, the provisions for equitable price adjustments for unanticipated site conditions, and the safeguards provided to ensure that the project's structural com-

ponents are durable and conforming to the contract specifications. It is axiomatic that a statute should be interpreted so as to give meaning to all the words in context; none of the words should be regarded as superfluous. *Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Authy.*, 352 Mass. 617, 618 (1967). We hold that the cartographic project involved in this case is not subject to the provisions of G. L. c. 30, § 39M, but rather involves a contract whose award is left to the reasonable judgment of the municipal officers charged with the responsibility therefor. No other contention has been raised to enable this case to withstand a 12(b)(6) motion to dismiss. The other arguments advanced by the plaintiffs, to show that in the public interest a requirement like that in § 39M should apply to municipal contracts for assessor's maps, are properly addressed to the Legislature.

*Judgment affirmed.*