THORN TRANSIT SYSTEMS INTERNATIONAL, LTD., & another[1] *vs.* MASSACHUSETTS BAY TRANSPORTATION AUTHORITY & another.[2]

No. 96-P-665.

Suffolk. May 21, 1996. - July 3, 1996.

Present: BROWN, KAPLAN, & LENK, JJ.

*Massachusetts Bay Transportation Authority,* Contract. *Contract,* Public works. *Statute,* Construction. *Words,* "Public work," "Public building."

The alteration and remodeling work on certain Massachusetts Bay Transportation Authority rapid transit stations, in connection with the proposed removal of the current fare collection system and the provision and installation of a new collection system, is a "public work" within the meaning of the public bidding statute, G. L. c. 30, § 39M, and that statute's requirements were applicable to the procurement process. [652-656] BROWN, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on February 2, 1996.

A petition filed in the Appeals Court on March 3, 1996, was heard by *Dreben,* J., and leave to file an interlocutory appeal was allowed by her.

*Thomas R. Murtagh* for Massachusetts Bay Transportation Authority.

*Lanny J. Davis,* of the District of Columbia, for Scheidt & Bachmann GmbH.

*Thomas R. Kiley* for Cubic Automatic Revenue Collection Group.

*John B. Flemming* for Thorn Transit Systems International, Ltd.

LENK, J. The plaintiffs in this matter are two disappointed

---

[1]Cubic Automatic Revenue Collection Group.
[2]Scheidt & Bachmann GmbH.

bidders in a competitive procurement process established by the defendant Massachusetts Bay Transportation Authority (MBTA),[3] the provider of rapid transit services to municipalities in eastern Massachusetts. The procurement's goal was to replace the MBTA's current, largely cash and token-based rapid transit fare collection system with a computerized, automated, integrated, state of the art fare collection system. After the MBTA awarded the approximately $40 million dollar contract for the provision and installation of the new system to defendant Scheidt & Bachmann GmbH, the plaintiffs sought to enjoin it, claiming that the procurement did not comply with G. L. c. 30, § 39M, and must be rebid, and that, in the alternative, even if c. 30, § 39M, were inapplicable to the subject contract, the MBTA had impermissibly awarded the contract in contravention of its own RFP.[4]

A judge of the Superior Court denied the plaintiffs' request for injunctive relief without stating his reasons. A single justice of this court, acting pursuant to G. L. c. 231, § 118, first par., thereafter enjoined the MBTA from continuing with its contract with Scheidt & Bachmann or from awarding the contract to any contractor until the project is rebid in accordance with the requirements of G. L. c. 30, § 39M. The single justice, in view of her determination that c. 30, § 39M, applies to this procurement, did not reach the plaintiffs' other claims of impropriety offered to support their request for

---

[3]The MBTA, acting on the assumption that the subject contract was not governed by any of the public bidding statutes, e.g., G. L. c. 30, § 39M, G. L. c. 149, §§ 44A et seq., and G. L. c. 30B, prepared its own request for proposals (RFP) and technical specifications for the purpose of obtaining qualified bids. The procurement process it designed was to be flexible and functional in nature and was to be conducted on the basis of competitive negotiations pursuant to a prescribed procedure.

[4]One disappointed bidder calls attention to the MBTA's unilateral cancellation of the RFP in the summer of 1995, after three bidders had submitted best and final offers, but before any contract award had been made. This bidder contends that the cancellation terminated the RFP, and that all bids had expired prior to the November, 1995, contract award to Scheidt & Bachmann (which had threatened litigation against the MBTA for cancelling the RFP), and that such contract award was consequently made in violation of the RFP and without authority. The other disappointed bidder asserts that the award was invalid because Scheidt & Bachmann's bid proposal did not comply in certain respects with the bid specifications and because the MBTA did not comply in certain instances with its own stated evaluation criteria.

injunctive relief. The single justice authorized the defendants to pursue an interlocutory appeal from her order.

We review the single justice's order "in the same manner as if it were an identical order by the trial judge considering the matter in the first instance." *Jet-Line Servs., Inc.* v. *Selectmen of Stoughton*, 25 Mass. App. Ct. 645, 646 (1988). The inquiry we make, accordingly, is "whether the single justice abused [her] discretion by entering an order without having a supportable basis for doing so." *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. App. Ct. 392, 395 (1994). We conclude that her order was proper.

The central issue on appeal is whether c. 30, § 39M, governs the subject procurement. The defendants concede that, if it does, the MBTA's procurement process failed to comply with statutory requirements. Section 39M provides, in pertinent part, that:

> "Every contract for the construction, reconstruction, alteration, remodeling or repair of any public work, or for the purchase of any material . . . by the commonwealth, or political subdivision thereof . . . and estimated by the awarding authority to cost more than ten thousand dollars . . . shall be awarded to the lowest responsible and eligible bidder on the basis of competitive bids . . . ."

G. L. c. 30, § 39M(*a*), as amended by St. 1991, c. 477, § 5. "Material" is defined in § 39M(*e*) to mean and include "any article, assembly, system, or any component part thereof." Section 39M by its terms does not apply to certain transactions, such as contracts otherwise subject to the provisions of c. 149, §§ 44A et seq. See § 39M(*a*). Cf. § 39M(*d*).

The MBTA does not contend that it is exempt from § 39M, and the contract cost plainly exceeds ten thousand dollars. Whether § 39M applies to the subject contract depends solely on whether it is "for the construction, reconstruction, alteration, remodeling or repair of any public work, or for the purchase of any material" (i.e., article, assembly, system or any component part thereof). The MBTA and Scheidt & Bachmann contend, in essence, that the subject contract for the provision and installation of the new fare collection system falls outside of the scope of § 39M because no "public work" or material therefor is implicated by the contract.

Section 39M "is designed to obtain the lowest price that competition among reasonable bidders can secure for contracts involving the actual physical 'construction' (including reconstruction, alteration, maintenance, remodeling or repair) of public buildings and improvements on land owned by the Commonwealth or one of its subdivisions, and contracts for the materials that typically go into such construction projects." *Andover Consultants, Inc. v. Lawrence*, 10 Mass. App. Ct. 156, 160 (1980). Contrast *Gosselin's Dairy, Inc. v. School Comm. of Holyoke*, 348 Mass. 793 (1965).

In determining whether the subject contract involves (a) the construction, reconstruction, alteration, maintenance, remodeling or repair of public buildings and improvements on land and/or (b) the materials that typically go into such projects, we must examine the character of the RFP which resulted in the contract. See *Datatrol Inc. v. State Purchasing Agent*, 379 Mass. 679, 695 (1980). This endeavor is somewhat hampered by the absence from the record on appeal of complete copies of both the RFP and the contract awarded to Scheidt & Bachmann. Nonetheless, the materials available to the single justice disclose that the RFP calls for the complete replacement of the existing MBTA subway fare collection system with a new system consisting of, inter alia, ticket vending machines, ticket validators, and standard and special access fare gates at 92 subway and Green Line stations, as well as support equipment including money room equipment and a centralized fare collection system information network. The contractor is required to remove the old system and to install the new one, which is to perform specific functions at a guaranteed level of reliability. This removal, provision, and installation work apparently also involves the physical removal and installation of station fare collection equipment and associated equipment at the rapid transit stations, the wiring of various types of station communications, computer and support equipment, the reconfiguration and remodeling of rapid transit stations to accommodate the new system, the coordination of work with and oversight of the contractor selected to perform station modification work, extensive design services, and money room design and installation. The foregoing supports the characterization of the contract as one involving physical alteration and remodeling type activities,

as well as the provision of articles, assemblies, systems and/or component parts used in such activities. Such work and materials are all in connection with what we recognized in *Andover Consultants,* 10 Mass. App. Ct. at 160, as being encompassed within the statutorily undefined term "public work," i.e., "public buildings and improvements on land owned by the commonwealth or one of its subdivisions."

The MBTA and Scheidt & Bachmann resist this conclusion by focusing attention on the fact that the construction activity is to be conducted at, or in connection with, subway and Green Line stations. We are assured by them that such stations can only be public buildings and, we are told, substantial public building construction (so-called "vertical" construction) activities are governed exclusively by c. 149, §§ 44A et seq., from which the MBTA is exempt, and not by c. 30, § 39M (which deals with so-called "horizontal" construction). We are also assured that the case law (leaving aside *Andover Consultants, supra*) requires us to construe the term "public work" restrictively and in a manner which renders it and the term "public building" mutually exclusive. To do otherwise, we are told, would result in our entering impermissibly into the Legislature's domain. The cases to which our attention is called in this regard, however, do not support the heavy weight which the MBTA and Scheidt & Bachmann would have them bear.

In *Modern Continental Constr. Co.* v. *Lowell,* 391 Mass. 829 (1984), the project at issue was the construction of miles of sewer pipeline and two pumping stations, one of which was not to be entirely subterranean and was to have amenities such as a restroom. The project had been put out to bid largely pursuant to c. 30, § 39M, but certain c. 149, §§ 44A et seq., bidding requirements were imposed as to the one special pumping station, presumably because it was regarded as a building. The Supreme Judicial Court held that c. 149, §§ 44A et seq., applied to the entire project and that rebidding as ordered by the trial court was the appropriate course. *Id.* at 840. In so holding, the court noted that c. 30, § 39M, by its own terms is not applicable to contracts subject to the extensive bidding requirements of c. 149, §§ 44A et seq. *Id.* at 832 n.6. The court acknowledged, but did not elaborate on, the distinction between the "public works" with which c. 30, § 39M, is concerned and the "building by a public agency"

toward which c. 149, §§ 44A et seq., is directed. *Id.* at 838-839. The court did not elucidate what does and does not constitute a "public work" and declined the parties' invitation to clarify the meaning of "building" as used in the bidding statutes. *Id.* at 839. The teaching of *Modern Continental,* consistent with that of *Gil-Bern Constr. Corp.* v. *Brockton,* 353 Mass. 503, 505 (1968), appears to be that when the public work to be bid out and awarded includes the construction of buildings, the more onerous public buildings bidding procedures of c. 149, §§ 44A et seq., rather than the less onerous public works bidding procedures of c. 30, § 39M, should apply.

Nor does *J. D'Amico, Inc.* v. *Worcester,* 19 Mass. App. Ct. 112 (1984), to which our attention is also directed, support the conclusion that "public work" and "public building" are always mutually exclusive terms. In *D'Amico,* the contract was to build a sewer interceptor; while all parties agreed that this was a nonbuilding public work governed by c. 30, § 39M, there was confusion among bidders as to the proper amount of the bid deposit. We noted in dicta the problematic public building-public works distinction which arises whenever public works include the construction of buildings, and we acknowledged that, in such circumstances, a distinction must be drawn between public works which are not buildings and public buildings projects in order to reconcile c. 30, § 39M, and c. 149, §§ 44A et seq., when both would otherwise apply. *Id.* at 113. In so doing, we offered an illustrative but not exhaustive list of public works projects within the ambit of c. 30, § 39M, including roads, bridges, and sewage facilities, but not buildings. *Ibid.*

Nothing said either in *Modern Construction, supra,* or *D'Amico,* in any way compels us now to conclude that the removal of the MBTA's current fare collection system and the provision and installation of a new automated fare collection system in numerous rapid transit stations falls outside of c. 30, § 39M. Chapter 149, §§ 44A et seq., does not come into play in our analysis both because (a) even if all the rapid transit stations were in fact buildings, itself a proposition not free from doubt, the contract work does not appear to be "for the construction, reconstruction, installation, demolition,

maintenance or repair of any building by a public agency"[5] and (b) it does not apply, in any event, to the MBTA. Without the interplay of c. 149, §§ 44A et seq., and c. 30, § 39M, no stark public works-public buildings distinction need arise and we need not view "public works" and "public buildings" in a mutually exclusive manner. The alteration and remodeling work on rapid transit stations required under the subject contract may then comfortably be encompassed within the term "public work" as construed in *Andover Consultants,* 10 Mass. App. Ct. at 160.[6]

We conclude that the plaintiffs were entitled to a preliminary injunction and that the single justice's order of injunctive relief was proper.

*Order affirmed.*

BROWN, J. (concurring). I am in full agreement with the reasoning of the majority opinion. It has not been made to appear that the single justice was not warranted in granting injunctive relief for the reason stated or on other bases that could readily be discerned from the papers before her.

In any event, the single justice was obliged in these circumstances to act as she did. In the arena of publicly bid

---

[5]General Laws c. 149, § 44A(2), controls the bidding procedures for "[e]very contract for the construction, reconstruction, installation, demolition, maintenance or repair of any building by a public agency." Unlike c. 30, § 39M, neither contracts for "alteration" nor for "remodeling" type work are covered by c. 149, § 44A(2). Contracts for the purchase of "material" to be used in such construction activities are also not covered by. c. 149, § 44A(2). A prior version of c. 149, § 44A, which did cover contracts for, inter alia, the "alteration [or] remodeling of any [public] building" was the subject of *Sears, Roebuck & Co.* v. *School Comm. of Burlington,* 3 Mass. App. Ct. 399, 401 (1975). We held there that whether or not c. 149, § 44A, applied to a contract calling for the installation of wall-to-wall carpeting in a public school building by cementing the carpeting to a floor depended upon the resolution of a question of fact, i.e., was such work either "alteration" or "remodeling." If so, the statute applied. *Id.* at 402.

[6]Our conclusion results from the language of c. 30, § 39M. "The defendants are correct that judicial legislation is inappropriate in public procurements law. However, interpreting a statute in accordance with its purpose is not to legislate, but merely to serve the Legislature." *Datatrol Inc.,* 379 Mass. at 701.

contracts, the expeditious action of a single justice is often the only way to maintain the status quo and preserve the *legitimate* rights of an unsuccessful bidder. See and compare *Paul Sardella Constr. Co.* v. *Braintree Hous. Authy.*, 3 Mass. App. Ct. 326, 331-334 (1975), *S.C.*, 371 Mass. 235 (1976). See also *Roblin Hope Indus., Inc.* v. *J. A. Sullivan Corp.*, 6 Mass. App. Ct. 481, 490-491 (1978), *S.C.*, 11 Mass. App. Ct. 36 (1980). Public agencies that disregard or permit deviations from the prescribed bidding process create grave uncertainty among all interested parties and arouse public suspicion that something is amiss in the selection system. See *Petricca Constr. Co.* v. *Commonwealth*, 37 Mass. 392, 401 (1994) (Brown, J., concurring). All too often the result of such lapses, as illustrated by this opinion, is further delay in the construction process and needless expense of public money in litigation.