Rouse, J.
INTRODUCTION
The plaintiff, Amtech Systems Corporation (Amtech), has filed this action seeking a declaration that the Massachusetts Turnpike Authority’s (Authority) procurement of an electronic toll collection services and system upgrade is void because the Authority has failed to comply with the Massachusetts public bidding statutes, G.L.c. 30 and c. 149. Amtech *223 also seeks a preliminary injunction enjoining the Authority from “proceeding any further with the evaluation of proposals submitted in response to the [Authority’s request for proposals], or award, or execute any contract resulting therefrom.”
After hearing and consideration of all submissions, [1] the plaintiffs motion for preliminary motion is DENIED for the reasons set forth below.
BACKGROUND
The Authority is in the process of procuring a complex complement of information processing technology and supportive services that will provide electronic toll collection (ETC) capability in a complete toll collection system upgrade for the Authority’s entire transportation network. This procurement includes three tiers of computer hardware and software, electronic toll collection and violation detection devices, account processing services, as well as system design, testing, maintenance, and marketing services.
The procurement process had two phases. The first phase comprised the request for qualifications (RFQ) which was publicly advertised and issued on July 14, 1997 and oral presentations. The second phase included site visits, a request for proposals (RFP), oral presentations, evaluations of RFP submissions, and best and final offers (BAFO) submissions, which the Authority received in early January of this year. This process mirrored one which the Authority utilized in 1995 for the procurement of electronic toll collection goods and services for the Ted Williams tunnel. Amtech participated in that procurement process without complaint or objection. Amtech has participated in the current process since the outset; it submitted two proposals in response to the RFP. Amtech’s first proposal was rejected by the Authorily because it was technically noncompliant on its face. Amtech’s second proposal was not within the RFP’s competitive range and therefore failed to qualify. Consequently, the Authority returned, unopened, Amtech’s cost proposal. At no time during either the RFQ or the RFP process did Amtech raise any concern or objection to the structure or content of the Authority’s procurement process.
On January 27, 1998, the Board of the Authority voted to authorize its chief financial officer to execute an irrevocable offer and commence contract negotiations with Syntonic Technologies, Inc., doing business as Transcore, of Harrisburg, Pennsylvania. The Authority anticipates that it will complete its negotiations and execute a contract with Transcore by March 1998.
The Request for Proposal
The services and equipment that the Authority is procuring under the RFP include system design and software development, computer hardware and related peripherals, including monitors and printers; transponders, camera, antennas, and touch screen toll terminals; design development, and testing services; and account processing, marketing, and maintenance services. The contractor’s functions are to provide and configure the hardware and software so that it implements the Authority’s requirements for an electronic toll collection system, as well as upgrade the Authority’s existing manual and automation toll collection equipment, and thereafter to operate the account processing center and maintain the completed system for the Authorily. Over eighty percent of the procurement’s price reflects the cost of the required services.
The RFP specifically limits the scope of work to the development and provision of the required services and equipment. Specifically, the RFP provides that:
The Contractor’s scope ofwork will be limited by the MTA. In general, the Contractor shall not make physical modifications to MTA facilities. Some examples of this would be modifications to the toll island, structural modifications, certain electrical wiring or connections, and cuts in the pavement for loops or treadles. Any modifications deemed necessary will be performed by others and not by the Contractor.
If physical, structural, or electrical modifications to certain facilities are required to accommodate the system, MTA will provide, or cause to be provided, all the labor, management, and other items or work required and will see that the modifications are accomplished within a reasonable time frame as identified to the MTA in the approved project schedule. The Contractor shall provide all civil, geo-technical, structural, electrical, mechanical, and architectural design services required for the construction and integration of the work in this RFP . . . Respondents shall not include the cost of performing such physical, structural, or electrical modifications. All materials to accomplish the physical modification shall be provided by the contractor and included in the cost proposal.
RFP §2.2.3.2.
The RFP does not require the contractor to perform physical, structural, or electrical modifications. The RFP does not include or permit any alterations or remodeling of the toll booths, toll lanes, or toll plazas. The existing automatic ticket issuing machines and receipt printers will not be upgraded under this procurement, nor will there be any alteration to the physical condition of the lanes. Any modifications to the Authoriiy’s facilities that might prove necessary will be performed either by in-house maintenance crews or by others.
Amtech contends that the Authority was required to bid this procurement in accordance with the requirements of the public bidding laws, G.L.c. 30 and c. 149. The Authority contends that the provisions of neither statute apply to its procurement of electronic toll collection services and equipment.
*224 DISCUSSION
In evaluating a request for preliminary injunctive relief, the court must first evaluate, in conjunction, the moving party’s claim of injury and its chance of success on the merits. In other words, the risk of harm to the moving party is to be evaluated in light of its chance of success on the merits. The risk of irreparable harm, if any, to the moving party if the injunction is not granted is then to be balanced against the risk of irreparable harm, if any, which granting the injunction would create to the opposing party. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). Since this dispute is between a private party and a public agency, the risk of harm to the public’s interest is also a factor to be taken into account in deciding whether or not preliminary injunctive relief is appropriate. Commonwealth v. Mass. CRINC, 392 Mass. 79, 89 (1984).
As a threshold matter, the Authority contends that Amtech has unreasonably delayed, to the Authority’s prejudice, in challenging the procurement process and that, therefore, it should be barred from seeking this extraordinary injunctive relief. At this juncture, the Authority has completed its evaluations and interviews and determined that neither of Amtech’s proposals warrants further consideration. The Authority expects to execute a contract with Transcore within another month or so. Amtech has known for almost five months[2] that the Authority was procuring its ETC services and equipment pursuant to a negotiated RFP process and not pursuant to either G.L.c. 30, §39M or c. 149, §44A. Amtech made no objection or complaint to the Attorney General (who is authorized to enforce the provisions of the public bidding statutes) until four weeks ago. Considerable time and effort have now been expended by the Authority as well as Amtech’s competitors, contract negotiations are well underway and a contract is due to be executed in March. The court finds that both elements of laches have been shown, unreasonable delay and prejudice, see Stewart v. Finkelstone, 206 Mass. 28, 36 (1910), but the court, in the interests of fair and full consideration, will proceed to address the standards for the granting of a preliminary injunction.
Likelihood of success on the merits.
It is well-established that Amtech, as the party challenging compliance with the public bidding statutes, must show that it possessed the “potential to obtain the award.” See, e.g., Modern Continental Construction Co. v. Lowell, 391 Mass. 829, 835 (1984) (rule under §44A is that a disappointed bidder must prove its potential for obtaining the award). Amtech does not have to show that it would have been awarded the contract if there had been a procurement procedure pursuant to the bidding statutes, but it must show that it did have the potential to obtain the contract. Amtech has not made this showing. The company has not offered this court any evidence that either of its two proposals satisfied the requirements of the RFP. With respect to the first proposal, the Authority determined that it was technically non-compliant under the RFP. The RFP explicitly required all bid teams to propose “active” transponder and reader technology. Amtech proposed “passive” or “backscatter” technology. In its second proposal, Amtech did offer “active” technology: however, the Authority found, after technical evaluation and scoring, that the proposal did not fall within the competitive range. The Authority based that conclusion on the fact that the project schedule exceeded the RFP schedule by one year, that there was no project manager for day-to-day operations, that the designated subcontractor lacked relevant experience, and that the system architecture was contrary to that specified in the RFP. There is nothing before this court to support any contention by Amtech that a change in procedure would improve its standing among its competitors. Amtech thus lacks a direct interest in the controversy. Finally, Amtech has no standing as a “private attorney general” because the legislative scheme makes no position for such a litigant. The Attorney General is authorized and directed to enforce the provisions of both §39M and §44A. Although the parties have brought this matter to the attention of the Attorney General, he has declined to investigate Amtech’s claims.
Amtech claims that the Authority’s procurement is subject to the public bidding statutes. Such a claim must be determined by assessing the “character of the RFP.” See Thorn Transit Sys. Int’l. v. Massachusetts Bay Transportation Authority, 40 Mass.App.Ct. 650, 653 (1996); Andover Consultants, Inc. v. Lawrence, 10 Mass.App.Ct. 156, 157-58 (1980). The focus of the inquiry is the RFP itself. In essence, the Authority contends that this is a procurement for computer goods and services while Amtech contends that the Authority’s procurement had to be bid in accordance with the requirements of G.L.c. 30, §39M because it involves “the construction, reconstruction, alternation, remodeling or repair of any public work, or for the purchase of any material. . .” or with the requirement of G.L.c. 149, §49A(2)) which involves “the construction, reconstruction, installation, demolition, maintenance or repair of any building . . .”[3]
An examination of the text of the RFP makes clear its purpose: the procurement of high technology goods, primarily computer hardware, software, and related equipment, and the services necessary to configure and insure the maximum efficiency of this equipment and the ETC system. The RFP also requires substantial supportive services, including system design, testing, maintenance, and marketing services and account processing center operations.
Noticeably absent from the RFP are any of the standard accoutrements of construction bidding, e.g., detailed drawings requiring the contractor to perform construction, reconstruction, alteration, or work or *225 materials specifications. Amtech has not referred the court to any provisions in the RFP which require the contractor to engage in “the construction, reconstruction, alteration, remodeling or repair of any public work” in the language of §39M, or the “construction, reconstruction, installation, demolition, maintenance, or repair of any building,” in the terms of §44A.
Amtech contends that the RFP’s requirement that the contractor supply (but not install) materials to accomplish the physical modifications brings the procurement within the confines of the public bidding statutes. The argument is not persuasive. The amount of the materials that the contractor is to supply is inconsequential; by Amtech’s calculation they represent merely 0.75% of the total contract value. The materials are incidental aspects of the procurement. Cf. Sears, Roebuck & Co. v. School Com. of Burlington, 3 Mass.App.Ct. 399, 402 (1975) (installation component of contract may be “so insubstantial in relation to the total contract as to warrant a finding that the contract is one for the supply of goods only”).
In 1995, this court (Garsh, J.) dismissed a lawsuit brought by a disappointed bidder in connection with the Authority’s procurement of ETC goods and services for the Ted Williams Tunnel. Although the challenge was not based on either c. 30, §39M or c. 149, §44A-H, the court noted, in its decision, that the procurement was not subject to either §39M or §44A because the RFP did not require construction, alteration, or repair of a public work or building." AT/Comm., Inc. v. Massachusetts Turnpike Authority, No. 95-5188, slip op. at 8, 4 Mass. L. Rptr. 535 (Oct. 31, 1995).
Amtech urges that Judge Garsh’s decision in AT/Comm. was vitiated by the case of Thorn Transit Systems Int'l., Ltd. v. Massachusetts Bay Transportation Authority, 40 Mass.App.Ct. 650 (1996). There appears to be significant differences between the scope of the work of the procurement in the Thom case and the RFP at issue here. In Thom, the RFP called for, inter alia, the reconfiguration and remodeling of rapid transit stations to accommodate the new fare collection system and for physical alteration and remodeling type activities. In contrast, the RFP in this case concerns the replacement of out-dated computer hardware and the attendant services to maintain the system.
Amtech maintains that both the value of the procurement (about $74 million) and the period of the contractor’s maintenance (over 8 years), support the conclusion that the procurement involves the construction of “public work.” Neither the cost of the system nor the length of time the contractor would be required to maintain it, is dispositive in defining the character of the RFP, the nature of the procurement or whether it fits within the ambit of the public bidding statutes.
Therefore, Amtech has failed to satisfy a necessary prerequisite to the granting of a preliminary injunction, a likelihood of success on the merits. Packaging Industries Group, supra at 617.
Public Interest
The negotiated bid process for this procurement is almost come to an end. By March, the Authority hopes to have executed a contract with Transcore. The objective of this procurement is to enhance the efficiency and reliability of the Turnpike and toll collection and to help mitigate traffic congestion associated with the Central Artery/Tunnel Project (the Big Dig). The Authority should be permitted to go forward with its process. Surprisingly, Amtech has not complained that the RFP process is unfair or skewed to favor a particular vendor. Both of Amtech’s proposals have been rejected; the first for being noncompliant and the second for failing to make the competitive range. The public’s interest would not be served by calling a halt to the process and giving Amtech yet a third opportunity to compete against vendors who have met the RFP’s requirements.
ORDER
For all of the foregoing reasons, it is hereby ORDERED that Amtech Systems Corporation’s motion for a preliminary injunction be DENIED.

 Amtech has submitted a verified complaint and memorandum in support of its motion. The Authority has submitted a memorandum, three affidavits, and a copy of the request for proposals (RFP).

 Arguably, Amtech has been on notice since 1995 when it participated in the first procurement process.

 Both statutes cannot apply to the same contract. See Modern Continental Constr. Co. v. Lowell, 391 Mass. 829, 832 n.6 (1984); G.L. 30, §39M(a), third paragraph.