## Cataldo Ambulance Service, Inc. *vs.* City of Chelsea & another.[1]

No. 97-P-166.

Middlesex. May 8, 1997. - June 23, 1997.

Present: Dreben, Gillerman, & Greenberg, JJ.

Further appellate review granted, 425 Mass. 1107 (1997).

*Practice, Civil,* Summary judgment. *Public Works,* Bidding procedure, Specifications. *Municipal Corporations,* Contracts. *Contract,* Public works, Bidding for contract. *Public Policy.*

A municipality breached an implied contract obligating it to adhere to specifications of a contract on which it solicited bids, where the municipality selected a bid that deviated substantially from the conditions of the invitation to bid; as a consequence, the bidder not selected was entitled to damages in the amount of its bid costs. [30-32]

Civil action commenced in the Superior Court Department on July 27, 1995.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment.

*Philip M. Cronin (William M. Cowan* with him) for the plaintiff.

*John Foskett* for the City of Chelsea.

*George A. Hall, Jr.,* for CareLine New England, Inc.

Greenberg, J. According to that line of decisions — the most recent example of which is *Thorn Transit Sys. Intl., Ltd.* v. *Massachusetts Bay Transp. Authy.,* 40 Mass. App. Ct. 650 (1996) — dealing with contracts governed by a public bidding statute, public agencies may not permit substantial deviations from the prescribed bidding process. We conclude that in the instant case, deviations from the announced procurement process required the disqualification of bids.

Upon cross motions pursuant to Mass.R.Civ.P. 56, 365

---

[1]CareLine New England, Inc.

Mass. 824 (1974), a judge of the Superior Court ordered summary judgment dismissing the plaintiff Cataldo Ambulance Service's complaint.[2] The complaint, among other things, sought a declaration that the defendant city of Chelsea (city) acted unlawfully under the Uniform Procurement Act, G. L. c. 30B, and that the contract must be awarded to the plaintiff.[3]

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mass.R.-Civ.P. 56(c), 365 Mass. 824 (1974). See *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994). The plaintiff asserts that, contrary to the judge's determination, there remains a genuine issue of material fact with respect to the parties' understanding of the applicability of G. L. c. 30B.[4] We need

---

[2]The plaintiff had earlier filed a motion for summary judgment on counts II and III of the complaint (breach of contract and implied breach of contract). A Superior Court judge denied the motion on the ground that "there exist[ed] a genuine issue of material fact as to whether the parties intended c. 30B to govern the selection process." The plaintiff then filed a motion, before another judge, for an evidentiary hearing on the parties' intent, which the defendants opposed. Before ruling on the motion, the judge directed both parties to file motions for summary judgment. In granting summary judgment for the defendants, and denying the plaintiff's motion, the judge found that the plaintiff could not reasonably have relied on the applicability of G. L. c. 30B because it "knew or should have known" that ambulance services were exempt from the public bidding statute, G. L. c. 30B.

[3]The other counts of the complaint against the city were for breach of contract, breach of implied contract, and promissory estoppel. The counts against CareLine were for interference with advantageous relations, interference with contractual relations, and violation of G. L. c. 93A. The plaintiff makes no argument on appeal as to its counts against CareLine. Its appeal as to CareLine is waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[4]We dispose of the plaintiff's contention that the judge abused his discretion by revisiting the initial denial of summary judgment with a quote from *Riley* v. *Presnell*, 409 Mass. 239, 242 (1991):

"Although a judge should not lightly undo the work of another judge, *Barbosa* v. *Hopper Feeds, Inc.*, 404 Mass. 610, 622 (1989), the power to reconsider an issue remains in the court until final judgment. *Peterson* v. *Hopson*, 306 Mass. 597, 601 (1940). 'Even without rehearing, a judge may modify a decision already announced, so long

not decide whether the procurement statute applies because we hold, in any event, that an implied contract arose that required the defendant to accept bids in conformity with the specifications.

The uncontested material facts are as follows. For thirteen years, beginning in 1982 and ending in June, 1995, the plaintiff provided the city with continuous ambulance service. Sometime prior to the expiration of the plaintiff's last contract, the city learned that other area cities had obtained equivalent services for significantly less than it was paying the plaintiff.[5] Armed with this newly-acquired knowledge, the city chose to invite public bidding, rather than renew the plaintiff's contract.[6] To this end, the city published legal notices in Boston, Chelsea, Everett, and Lynn newspapers. None of the notices referenced G. L. c. 30B. At the same time, the city made available to interested bidders the invitation for bids, which specified the scope of services it required the contractor to provide.[7] The invitation for bids referred to G. L. c. 30B, including a statement in the introduction section that "Massachusetts General Laws, Chapter 30B, which is incorporated herein by reference, shall govern all procedures."[8]

Both the plaintiff and the defendant CareLine submitted bids to provide services at no cost to the city. The plaintiff's

---

as the case has not passed beyond the power of the court.' *Id.* at 602. The denial of a motion for summary judgment is not a final judgment or decree and thus the trial judge was within his authority to reconsider and alter the prior decision."

[5]The last contract was at a cost to the city of $90,000.

[6]This decision was voluntary. General Laws c. 30B, § 1(24), exempts contracts for ambulance services by governmental bodies from the act.

[7]The specifications stated:

"The CONTRACTOR shall supply the City of Chelsea with:

"a. One basic life support vehicle garaged in Chelsea 24 hours a day, seven (7) days a week, staffed with two (2) emergency medical technicians.

"b. Back-up ambulance service 24 hours a day, seven (7) days a week.

"c. Advanced life support vehicle, available 24 hours a day, staffed with paramedics."

[8]Other significant references to G. L. c. 30B in the invitation for bids included:

bid conformed strictly to the bid specifications. Along with its bid, the plaintiff included a cover letter which stated:

> "As I am sure you are aware, Cataldo Ambulance Service has been the sole provider of Emergency Ambulance Services to the City of Chelsea for the past thirteen years . . . . It is our intent to continue our contractual relationship with the City of Chelsea for many years to come. As you know, ambulance services are exempt from the Procurement Act, therefore, due to our standing and investment in the community, and in order to maintain continuity, we are requesting the opportunity of last refusal."

For its part, CareLine submitted a bid for more than the bid specifications required. It offered to provide an advanced life support vehicle garaged in Chelsea 24 hours a day, seven days a week, staffed with two registered paramedics as the primary responder. The bid specifications required only that the bidder evidence an ability to garage in Chelsea a basic life support vehicle staffed with emergency medical technicians. See note 7, *supra*. On June 29, 1995, the city awarded CareLine the contract.

CareLine's deviation from the bid specifications is significant whether or not G. L. c. 30B governed the bidding procedure. We agree with the plaintiff that if that statute governed, Care-Line's bid was nonresponsive, and therefore ineligible for

---

"Pursuant to G. L., c. 30B, the City may waive 'minor informalities' or allow the proposer to correct them. Other minor errors will be clarified in the spirit and letter of c. 30B. Conditional proposals will not be considered as responsive pursuant to c. 30B.

". . . .

"Pursuant to Mass.Gen.L. c. 30B, § 5(e), All Bidders shall:

"a. present sufficient evidence, or make other presentation that they will be able and capable of providing all service outlined in the Detailed Specifications attached herewith.

"b. present sufficient evidence, or make other presentation that they will be able and capable of providing all service outlined in the Agreement for Services attached herewith.

"c. provide evidence of a minimum of five (5) years of experience in the provision of ambulance services."

consideration. G. L. c. 30B, § 5(*g*).[9] Even outside of the statutory framework, however, general principles of fairness obligate solicitors of competitive bids to consider only those bids that conform to the specifications issued. In *New England Insulation Co.* v. *General Dynamics Corp.*, 26 Mass. App. Ct. 28, 30-31 (1988), this court recognized that, where a bid solicitor is a governmental entity, "an invitation to bid upon certain conditions followed by the submission of a bid on those conditions creates an implied contract obligating the bid solicitor to those conditions." The plaintiff's submission of its bid in reliance on the specifications set by the city created an implied contract obligating the city to those specifications.[10] We need not decide the question, therefore, whether there remains a genuine issue of material fact as to whether G. L. c. 30B governed the contract.

Courts in the Commonwealth and elsewhere have spoken to the public policy behind competitive bidding statutes. Those policy concerns apply with equal force where a government entity, although not required by statute to do so, nonetheless initiates a public bid. See *Interstate Engr. Corp.* v. *Fitchburg*, 367 Mass. 751, 758 (1975) (through honest and open procedure for competition for public contracts, competitive bidding statute places all contractors on equal footing); *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 691-692 (1982) (the legislative purpose of the bidding statute is "to prevent favoritism, to secure honest methods of letting contracts in the public interest, to obtain the most favorable price, and to treat all persons equally"); *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 840 (1984) ("the purpose of competitive bidding statutes is not only to ensure that the awarding authority obtain the lowest

---

[9]General Laws c. 30B, § 5(*g*), as inserted by St. 1989, c. 687, § 3, provides that "[t]he procurement officer shall award the contract to the lowest responsible and responsive bidder." Under the act, a responsive bidder is one who "has submitted a bid or proposal which conforms in all respect to the invitation for bids or request for proposals." G. L. c. 30B, § 2, as inserted by St. 1989, c. 687, § 3.

[10]The city contends that only through an implied contract would it be obligated to adhere to the requirements of c. 30B. Because we find the existence of an implied contract on grounds other than the plaintiff's reliance on the city's references to c. 30B in its invitation for bids, we do not reach the issue of whether or not those references were sufficient to create such a contract.

price among responsible contractors, but also to establish an open and honest procedure for competition for public contracts"); *Amdahl Corp.* v. *Bureau of Sys. Policy & Planning,* 26 Mass. App. Ct. 991, 996 (1988) (selection boards must evaluate competitive bids on "common footing").

We employ the reasoning of the court in *Fischbach & Moore, Inc.* v. *New York City Transit Authy.,* 79 A.D.2d 14 (N.Y. 1981). Noting that "public policy mandate[s] that bidders be treated equally and fairly in their pursuit of public work," *id.* at 18, the court stated:

> "To that end, courts have held, for example, that a municipality may not ease contract specifications after bids have been submitted or waive material variances in bids received. Were it otherwise, legitimate bidders, who might have been willing to reduce their bids had they known that the specifications of the job would be relaxed, would be unfairly deprived of the opportunity to do so."

*Id.* at 20 (citations omitted). This logic applies with equal force to the situation of tie bids at issue here. Were courts to permit municipalities to heighten contract specifications after the submission of bids, legitimate bidders would be unfairly deprived of the opportunity to match a heightened proposal at the same low cost. Nor do we consider the deviation at issue nonmaterial, so as to excuse strict adherence to the terms of the bid. While minor variations do not compel rejection of a bid, *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. 181, 185 (1993), variations as to matters of substance are material, *Gil-Bern Constr. Corp.* v. *Brockton,* 353 Mass. 503, 505-506 (1968),[11] and this is so even in cases where the violation benefits the public. *Phipps Prods. Corp.* v. *Massachusetts Bay*

---

[11]For an example where a deviation was material, see *Modern Continental Constr. Co.* v. *Lowell,* 391 Mass. at 840 (bidder prequalification cannot be waived). For cases finding deviations nonmaterial, see, e.g., *Fred C. McClean Heating Supplies, Inc.* v. *School Bldg. Commn. of Springfield,* 341 Mass. 322, 324 (1960) (obvious clerical error); *DiMinico & Cincotta, Inc.* v. *Fire Commr. of Boston,* 346 Mass. 766 (1963) (requested figure for amount to be charged omitted, but obvious and readily ascertainable); *Gil-Bern Constr.* v. *Brockton,* 353 Mass. at 504 (failure to submit construction progress schedule with bid as required by the "Information for Bidders" was minor deviation).

*Transp. Authy.*, 387 Mass. at 692. Where the bid at issue was for ambulance services, an offer to provide services in addition to those specified is a substantive deviation. See also *Thorn Transit Sys. Intl., Ltd.* v. *Massachusetts Bay Transp. Authy.*, 40 Mass. App. Ct. at 657 (Brown, J., concurring) ("Public agencies that disregard or permit deviations from the prescribed bidding process create grave uncertainty among all interested parties and arouse public suspicion that something is amiss in the selection system"). The city breached its contract by selecting a bid that deviated substantially from the conditions of the invitation to bid.[12]

The judgment is reversed. The case is remanded to the Superior Court where a new judgment shall enter declaring null and void the bid of CareLine and awarding damages of bid costs against the city of Chelsea to the plaintiff due to the city's breach pursuant to prayer five. *Paul Sardella Constr. Co.* v. *Braintree Hous. Authy.*, 371 Mass. 235, 243 (1976). All other prayers for relief are denied. Because it is statutorily exempt from G. L. c. 30B, we cannot require that the city rebid the contract. The city retains authority to award the contract on a noncompetitive basis. See *Surdell* v. *Oswego*, 91 Misc. 2d 1041, 1045 (N.Y. Sup. Ct. 1977).

*So ordered.*

---

[12]We reject the city's contention that Cataldo's bid similarly exceeded the minimum evaluation criteria. Cataldo's bid contained a statement that the specifications in the invitation for bids mirrored previous requirements which, in the past, it had "consistently met or *exceeded*" (emphasis supplied). However, the minimum evaluation criteria required the bidder to present evidence of ability and capability to provide the required services; Cataldo's declaration served that purpose. In addition, Cataldo went on to state that it took "no exceptions to any of the requirements contained within the Detailed Specifications or Agreement for Services contained within the INVITATION FOR BIDS document."