Cataldo Ambulance Service, Inc. *vs.* City of Chelsea & another.[1]

Middlesex. December 2, 1997. - January 7, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Public Works,* Bidding procedure. *Municipal Corporations,* Contracts. *Contract,* Public works, Bidding for contract, Implied.

A Superior Court judge correctly ruled that an invitation for bids for municipal ambulance services that included references to G. L. c. 30B, which did not apply, could not be reasonably relied on by an unsuccessful bidder as a basis for its bid, and, in any event, where the bidder had not in fact conducted itself as though c. 30B were applicable, its assertion of reliance on the references did not create a triable issue of fact. [385-388]

Where two zero dollar bids conformed to the specifications, that is, to the "minimum evaluation criteria," in an invitation for bids for municipal ambulance services, the municipality appropriately awarded the contract to the bidder offering better ambulance services; there was no showing of deception, dishonesty, improper conduct or unfair procedure to form a basis for a finding that the municipality was liable to the unsuccessful bidder by reason of an implied contract. [388-389]

In a civil action, the judge properly reconsidered the issue of summary judgment previously examined by another judge on the basis of a motion filed by the plaintiff, where the judge had before him new motions, filed by the defendants, supported by detailed affidavits. [389-390]

Civil action commenced in the Superior Court Department on July 27, 1995.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Philip M. Cronin* for the plaintiff.

*John Foskett* for City of Chelsea.

*George A. Hall, Jr.,* for CareLine New England, Inc.

[1]CareLine New England, Inc.

GREANEY, J. This dispute concerns the award of a contract by the city of Chelsea for the provision of ambulance services. A judge in the Superior Court granted summary judgment dismissing the complaint against both defendants, the city and the successful bidder, CareLine New England, Inc. (CareLine), in the suit brought by the plaintiff, Cataldo Ambulance Service, Inc. (Cataldo). Cataldo sought a declaratory judgment as to the validity of the contract award, claiming that a contract existed between it and the city that the latter had breached.[2] The judge concluded that, as matter of law, Cataldo could not have reasonably relied on references to G. L. c. 30B, the Uniform Procurement Act, in the city's invitation for bids when submitting its bid on the contract.[3] The Appeals Court, however, reversed the judgment of the Superior Court as to the city, and ordered that summary judgment enter for Cataldo, on the basis that Cataldo's submission of its bid in response to the city's specifications created an implied contract obligating the city to those specifications. *Cataldo Ambulance Serv., Inc.* v. *Chelsea,* 43 Mass. App. Ct. 26, 30 (1997). The Appeals Court concluded that "[t]he city breached its contract by selecting a bid [from CareLine] that deviated substantially from the conditions of the invitation to bid," and awarded damages of bid costs against the city to Cataldo. *Id.* at 32. We granted the defendants' applications for further appellate review, and we now affirm the judgment of the Superior Court.

The following are the undisputed material facts. Cataldo supplied ambulance services to the city, under contract, from 1982 until its last contract expired on June 30, 1995. Prior to the expiration of this contract, the city, which had been placed under State receivership in September, 1991, learned that other area municipalities had obtained equivalent ambulance services for significantly less than the $90,000 per year that it was paying Cataldo. After attempts to negotiate a new contract with Cataldo at a lower cost proved unsuccessful, the city decided to put its ambulance services contract out to public bid. Although such contracts are exempt from the statutory requirements of

---

[2]In its complaint, Cataldo also included claims against CareLine for tortious interference with Cataldo's advantageous relations with the city and for violation of G. L. c. 93A. Cataldo has not appealed from the grant of summary judgment in favor of CareLine on these claims.

[3]General Laws c. 30B, the Uniform Procurement Act, mandates that certain municipal contracts be awarded by competitive, advertised bidding, and sets out requirements for this procurement process. Section 1 (24) of the Act exempts contracts for ambulance service from the statute's requirements.

G. L. c. 30B, see note 3, *supra*, the city invited public bidding by publishing legal notices in Boston, Chelsea, Everett, and Lynn newspapers. None of these notices made any reference to G. L. c. 30B. The city also made available to interested bidders an invitation for bids which specified the minimum criteria for evaluation of bids and the scope of services it required the contractor to provide. The invitation contained several references to G. L. c. 30B, including a statement in the introduction that "Massachusetts General Laws, Chapter 30B, which is incorporated here by reference, shall govern all procedures."

Cataldo and CareLine were the only two companies to submit bids in response to the city's invitation for bids. Cataldo's bid submission included a cover letter to the city's procurement officer that stated, "As you know, ambulance services are exempt from the Procurement Act, therefore, due to our standing and investment in the community, and in order to maintain continuity, we are requesting the opportunity of last refusal." Both companies submitted zero dollar bids, meaning that there would be no cost to the city for the ambulance services. Cataldo's bid adhered to the specifications contained in the bidding documents, while CareLine's bid provided for an advanced level of service, beyond that specified by the city.[4] After reviewing the bids, conducting site visits and interviews at both companies, and considering recommendations from the members of a special committee formed to review the bids, the city's procurement officer awarded the ambulance services contract to CareLine. The day after CareLine was selected, Cataldo made contact with the procurement officer and asked if there was anything Cataldo could do to have the award reconsidered. The procurement officer rejected Cataldo's attempt to change the award.

1. Cataldo argues (1) that by including references to G. L. c. 30B, in the invitation for bids, the city intended to make its procurement for ambulance services subject to that statute's requirements, even though G. L. c. 30B otherwise would not have applied; (2) that it responded to the references to G. L.

---

[4]While the bid specifications required the contractor to supply the city with a basic life support ambulance garaged in the city twenty-four hours a day, seven days a week, staffed with two emergency medical technicians, CareLine offered instead to provide an advanced life support vehicle garaged in the city twenty-four hours a day, seven days a week, staffed with two registered paramedics.

c. 30B, by submitting a bid that was in compliance with the terms and conditions of the bidding documents[5]; and (3) that CareLine's bid, offering to furnish a higher level of ambulance services, was nonresponsive, and should have been rejected, because G. L. c. 30B, § 5 (*g*), requires that "[t]he procurement officer shall award the contract to the lowest responsible and responsive bidder," a situation which, Cataldo says, applied only to its bid.

There is no dispute that the city's ambulance services contract is exempt from the requirements of G. L. c. 30B, and, ordinarily, could be awarded by the city's procurement officer in the exercise of discretion. In so acting, the procurement officer obviously would seek to advance the city's best interests by obtaining the highest level of ambulance services at the lowest cost. It is also undisputed that no contract was ever executed between the city and Cataldo. Cataldo's right to recover, therefore, has to be premised on one of two theories: (1) that a contract exists by reason of Cataldo's reliance on the city's references in its invitation for bids to G. L. c. 30B (this theory is based on the holdings in decisions such as *Rhode Island Hosp. Trust Nat'l Bank* v. *Varadian*, 419 Mass. 841, 849-850 [1995], and *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760-761 [1978]),[6] or (2) that the city is bound through the existence of an implied contract.

The first theory (rejected by the judge in the Superior Court)

---

[5]General Laws c. 30B, § 5 (*e*), requires the procurement officer to "evaluate a bid based solely on the requirements and criteria set forth in the invitation for bids."

[6]In *Loranger Constr. Corp.* v. *E.F. Hauserman Co.*, 376 Mass. 757, 760 (1978), we adopted the principle, now stated in Restatement (Second) of Contracts § 87B (2) (1979), that "[a]n offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice." In *Rhode Island Hosp. Trust Nat'l Bank* v. *Varadian*, 419 Mass. 841, 849 (1995), we applied this principle to a promise, noting that the words "offer" and "promise" can be used interchangeably in the sense of "commitment." In both cases, however, we indicated that the term "promissory estoppel" should not be used in deciding cases under this principle because that term "tends to confusion" and overlooks the point that "[w]hen a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract,' and it is enforceable pursuant to a 'traditional contract theory' . . . ." *Id.*, quoting *Loranger Constr. Corp.*, *supra* at 761. See Restatement (Second) of Contracts § 90 (1) (1979).

requires that Cataldo have reasonably relied on the information contained in the city's invitation for bids. The judge decided that any reliance by Cataldo on the city's references to G. L. c. 30B in the invitation for bids was not reasonable. The judge pointed to Cataldo's own cover letter accompanying its bid submission acknowledging the irrelevance of G. L. c. 30B to an ambulance services contract and requesting an opportunity for last refusal. Such an exercise is clearly forbidden by G. L. c. 30B, § 5 (*f*), which does not allow any changes to a bid once the bids are open that would be prejudicial to the interests of fair competition. It was also undisputed that Cataldo approached the city procurement officer after the contract had been awarded and sought to change the outcome of the bidding process. Any attempt to renegotiate after the bids were submitted would be prohibited by G. L. c. 30B.

Cataldo argues that the judge failed to take into account its affidavit in which it had stated that "Cataldo understood [the references to G. L. c. 30B in the city's bid invitation] to be an express indication that Chapter 30B would apply even though the City otherwise would not have been bound by the statute . . . ." Cataldo's affidavit further states: "In reliance on the reference to Massachusetts General Laws Chapter 30B, Cataldo submitted a timely bid strictly in compliance with all terms and conditions of the bidding documents and specifications. Cataldo did not believe our bid could differ from the requirements of the bid invitation according to Chapter 30B."

The assertions in Cataldo's affidavit are not sufficient to create a triable issue of fact. The question whether a party's reliance on a promise by another is reasonable is often a question of fact, but in an appropriate case can present an issue of law. This is especially so when the parties involved are of relatively equal knowledge and sophistication. The critical time for determining the existence of reliance was the time when the bids were received and examined and the contract awarded. Cataldo's post hoc claim of reliance is not determinative, if the summary judgment record demonstrates that, at the critical time, Cataldo could not have reasonably relied on the city's references to G. L. c. 30B. As has been mentioned, Cataldo's letter accompanying its bid stated that it knew that G. L. c. 30B did not apply to the contract, and, consistent with this awareness, Cataldo requested that it be allowed to proceed outside of G. L. c. 30B, to exercise an opportunity for last refusal. Catal-

do's conduct after learning that it was not the successful bidder was also inconsistent with G. L. c. 30B. The decisive point is that Cataldo's assertion of reliance cannot be reasonable when Cataldo's words and actions, at the relevant time, express doubt and equivocation on its part that the city was binding itself to G. L. c. 30B. In the circumstances, Cataldo's affidavit is subject to the rule that "bare assertions and conclusions regarding a company officer's understandings, beliefs, and assumptions are not enough to withstand a well-pleaded motion for summary judgment." *Polaroid Corp.* v. *Rollins Envtl. Servs. (NJ), Inc.,* 416 Mass. 684, 696 (1993). The affidavit was properly disregarded.

2. We come to Cataldo's second theory of recovery. The Appeals Court reversed and ordered summary judgment for Cataldo on the basis that, without regard to the applicability of G. L. c. 30B, an implied contract existed which had been breached by the city. *Cataldo Ambulance Serv., Inc.* v. *Chelsea, supra* at 32. In arriving at its decision, the Appeals Court relied on *New England Insulation Co.* v. *General Dynamics Corp.,* 26 Mass. App. Ct. 28, 30-31 (1988), in which it had stated that, in the context of government procurement contracts, "an invitation to bid upon certain conditions followed by the submission of a bid on those conditions creates an implied contract obligating the bid solicitor to those conditions."[7] The Appeals Court applied this principle to the contract specifications and concluded that the city violated an implied contract with Cataldo by selecting CareLine's bid which deviated substantially from the specifications issued in the city's invitation for bids.

We agree with the Appeals Court that, as a general proposition, whether pursuant to a procurement statute or in the interest of fairness, "solicitors of competitive bids [are obligated] to consider only those bids that conform to the specifications issued." *Cataldo Ambulance Serv., Inc.* v. *Chelsea, supra* at 30.

_____

[7]While we agree with this general principle, we also note that the facts in *New England Insulation Co.* v. *General Dynamics Corp.,* 26 Mass. App. Ct. 28 (1988), that gave rise to this principle are very different from the facts of this case. There, the defendant represented in its solicitations that the bids would remain in a locked file until after the bid closing date. In fact, the plaintiff's bid, containing confidential engineering and design work, was made available to a competitor before the bid closing date as part of a "kickback" scheme, and it was determined that the entire bidding process was a sham. *Id.* at 29. There is no evidence of any such fraud in the bidding procedure for Chelsea's ambulance services contract.

However, even under this proposition, the city did not breach its obligation, because both Cataldo's and CareLine's bids conformed to the specifications in the invitation for bids.

The submission requirements in the city's invitation for bids specified "minimum evaluation criteria" that would be used to determine whether a bid was responsive. That these criteria were to be considered the *minimum* for evaluation is carefully underscored in the bidding checklist, where it was repeated that any failure to meet all minimum evaluation criteria would be cause for the city's rejection of the bid. Among these criteria was a requirement that all bidders "present sufficient evidence . . . that they will be able and capable of providing all service outlined in the Detailed Specifications attached herewith."

Cataldo's argument for finding that CareLine's bid was not responsive, reduced to practical terms, is that CareLine offered to supply an *enhanced* level of ambulance services, namely, an advanced life support ambulance staffed with paramedics rather than a basic life support ambulance staffed with emergency medical technicians. Careline's bid was responsive, however, because the ambulance services offered by CareLine encompassed the specifications set forth in the minimum evaluation criteria of the bidding documents.

Further, the city's decision to award the ambulance services contract to CareLine is particularly justifiable in light of the fact that both Cataldo and CareLine submitted zero dollar bids. It was appropriate for the city to consider factors other than price and to award the contract to the bid that met all minimum specifications and offered better ambulance services at no additional cost. While competitive bidding serves a dual purpose of obtaining the most favorable contract while ensuring fair competition, see *Modern Cont. Constr. Co.* v. *Lowell*, 391 Mass. 829, 840 (1984), there is nothing to show any dishonesty, deception, or improper conduct by the city, or to show that CareLine was privy to any information that was not also available to Cataldo. There is no basis in law to hold that the city was bound to Cataldo by reason of an implied contract.

3. Cataldo's remaining arguments present nothing of merit. The judge could properly reconsider the issue of summary judgment that had been examined previously by another judge on the basis of a motion filed by Cataldo. See *Riley* v. *Presnell*, 409 Mass. 239, 242 (1991). The judge had before him new motions for summary judgment filed by the defendants and sup-

ported by detailed affidavits. The fact that the procurement officer was not required to follow G. L. c. 30B negates Cataldo's argument that she acted improperly in considering the advisory recommendation of the special committee that evaluated the bids.

4. The judgment of the Superior Court is affirmed.

*So ordered.*