Gordon, Robert B., J.
Presented for decision is the Defendants’ Motion for Summary Judgment, pursuant to which they seek dismissal of all remaining counts of the Plaintiffs Verified Complaint. These counts assert causes of action for handicap discrimination in violation of Mass. G.L.c. 151B, §1(17) (Count I), and common-law intentional infliction of emotional distress (Count II), each premised on the plaintiffs allegation that she was passed over for promotion at the Licensing Board of the City of Boston on account of her diagnosed kidney disease.[1] For the reasons which follow, the evidence of record permits no reasonable finding of liability with respect to either claim, and the Defendants’ Motion for Summary Judgment must be allowed.
Background
Plaintiff Nancy A. Mickiewicz is an administrative employee of the City of Boston’s Licensing Board (the “Licensing Board”). Ms. Mickiewicz was hired by the Licensing Board in 1994, and currently serves as its Head Administrative Clerk. Ms. Mickiewicz suffers from a serious kidney disease known as Focal Segmental Glomerular Sclerosis (“FSGS”), a diagnosis she received in 1985. Ms. Mickiewicz has had three kidney transplants since 1989; and her FSGS condition has caused substantial bone loss, restricted plaintiffs ability to walk or sit for extended periods of time, and prevented Ms. Mickiewicz from lifting or carrying bulky items. Over the past decade, Ms. Mickiewicz has managed her disease with thrice-weekly dialysis sessions, a course of treatment plaintiff acknowledges the Board to have accommodated fairly with adjusted work scheduling. Indeed, Ms. Mickiewicz confirms that she made the Board aware of her medical circumstances at the time she initially sought employment; and she acknowledges more generally that, notwithstanding her limitations in respect to lifting and walking long distances, she has at all times been able to carry out the essential functions of both her current position and those of the posted position she sought unsuccessfully.
In 2005, plaintiff having by this time been employed for more than a decade, a Senior Budget Analyst named Jason Chung resigned from his employment with the Board. This resignation prompted the Board to redistribute Mr. Chung’s duties to two existing employees—Peter Wong and Mary Carroll. Mr. Wong assumed Mr. Chung’s responsibility for computer support; and Ms. Carroll assumed Mr. Chung’s duty to order printing supplies for the Board. Board Secretary *449 Jean Lorizio consulted with the City of Boston’s Human Resources Department, and was instructed to complete forms pursuant to which Mr. Wong and Ms. Carroll would receive reclassifications of their job and pay grade and retroactive increases to their compensation.
In or around November of 2005, plaintiff learned that colleagues Wong and Carroll had been awarded new positions and pay raises. The positions, however, had not been posted in accordance with the Board’s collective bargaining agreement with Ms. Mickiewicz’s union (SEIU, Local 888), and plaintiff filed a grievance. This grievance eventually led to an arbitration, the result of which was that the Board was found to have violated the job-bidding procedures of its contract. The Arbitrator thus ordered the Board to post the two positions pursuant to its collective bargaining agreement, and to award the jobs in accordance with the governing criteria recited in the contract.[2]
Following issuance of the arbitral order in Ms. Mickiewicz’s grievance, the Board posted the two positions—one for Administrative Assistant and the other for Administrative Assistant/Computer Support Analyst. Mary Carroll applied for the former, Peter Wong for the latter, and Ms. Mickiewicz for both. Board Secretary Jean Lorizio and Board Commissioner Suzanne Iannella interviewed all three candidates, and concluded that—particularly inasmuch as they had already been performing the jobs’ constituent functions for some four years—Mr. Wong and Ms. Carroll possessed superior experience and qualifications relative to the plaintiff. Curiously, plaintiff herself concedes in Paragraph 7 of the parties’ Joint Rule 9A(b)(5) Statement of Material Facts As To Which There is No Dispute (the “Rule 9A(b)(5) Statement”) that, “Based on experience and qualifications of the respective candidates, the board decided to hire Mr. Wong for the administrative assistant/computer support assistant and Ms. Carroll for the administrative assistant position.” Indeed, plaintiff confirms the nearly same admission a second time in her Rule 9A(b)(5) submission, when she adopts the following description of the Board’s selection decision: “By the time Defendants interviewed Mary Carroll and the Plaintiff for the new-established position of administrative assistant, Peter Wong and Maiy Carroll had already been working in the position for four years, and had been hired on the basis of their experience, their qualifications and their interview.”
In September of2007, Ms. Mickiewicz filed a charge of handicap discrimination with the Massachusetts Commission Against Discrimination (MCAD), and in 2009, following issuance of the Arbitrator’s ruling in respect to her contract grievance, plaintiff brought the present civil action. Plaintiff now maintains that the process pursuant to which the Board promoted Peter Wong and Maiy Carroll reflects unlawful handicap bias, and that the actions of the defendants in furtherance of this decision intentionally inflicted severe emotional distress upon her. Following the conclusion of extended discovery, including depositions of both the plaintiff and the Board’s principal decision-maker, defendants filed the present Motion for Summary Judgment.
The Plaintiffs Claims
The gravamen of plaintiffs action is the charge that the Board awarded two positions to employees other than Ms. Mickiewicz based on an unlawful consideration of her medical disability. This, it is asserted, represents at once both a violation of G.L.c. 151B, §1(17) and an intentional infliction of emotional distress. In support of her claims, plaintiff cites the Court to the following items of evidence in the summary judgment record:
Following Ms. Mickiewicz’s last kidney transplant in 2003, Board Secretary Jean Lorizio on no fewer than seven occasions asked Ms. Mickiewicz if she needed help completing her work. Although plaintiff acknowledges that Ms. Lorizio made no specific mention of her medical problems on any of these occasions, Ms. Mickiewicz in each instance stated that she required no assistance and (internally) regarded the inquiries as “degrading” and reflecting a lack of confidence in her. According to Ms. Lorizio’s testimony, however—which the plaintiff once again admits as undisputed in Paragraph 31 of the parties’ Rule 9A(b)(5) Statement—plaintiff not infrequently failed to get her work done in a timely manner.[3] This is what prompted Ms. Lorizio to call upon Mary Carroll to provide Ms. Mickiewicz with job assistance (albeit over the plaintiffs objection that it was not needed).
The promotions of Mr. Wong and Ms. Carroll were not effected in accordance with the job posting requirements of the Board’s union contract, a fact found by the Arbitrator in sustaining the grievance filed by Ms. Mickiewicz.
The Board defended its action in arbitration by characterizing the Wong and Carroll pay increases as “reclassifications,” a construction of the contract the Arbitrator rejected. Notably, however, Arbitrator Ryan remarked several times in his Decision and Award that many public sector collective bargaining agreements provide for unilateral job reclassifica-tions by employers who adjust employee compensation in light of changed duties and responsibilities. Thus, although the Arbitrator found that the Board’s contract with SEIU, Local 888 did not provide for such an employer prerogative, he in no manner suggested any sort of invidious intent on the part of the Board. To the contrary, the Arbitrator’s repeated acknowledgment that this is a common feature in municipal union contracts would indicate a reasonable misunderstanding of the point by the City human resources personnel whom Jean Lorizio consulted.
*450 The Board asserted in arbitration that Ms. Mickiewicz had more seniorily than either Peter Wong or Mary Carroll, a misapprehension the Arbitrator corrected on the record in his decision. Once again, however, the Board’s error appears to reflect its failure to apply the contract’s seniorily definition properly, seniority being defined to include only the total period of “continuous” rather than cumulative service. As plaintiff acknowledges in Paragraph 34 of the parties’ Rule 9A(b)(5) Statement, the Board erroneously failed to account for breaks in the continuily of service of Mr. Wong and Ms. Carroll. Although plaintiff correctly notes that the Board never challenged the Arbitrator’s statement in his Decision and Award that Ms. Mickie-wicz in fact had greater seniorily than Mr. Wong and Ms. Carroll, the statement itself turns out to be entirely immaterial. Ms. Mickiewicz’s seniorily had nothing whatsoever to do with the Board’s selection decisions in this case because, as plaintiff herself acknowledges, the Board’s decision-makers determined that Mr. Wong and Ms. Carroll had demonstrably superior experience and qualifications. Arbitrator Ryan’s Decision and Award thus declares, and plaintiffs own Response to the Court’s Supplemental Order in the present motion concedes, that seniority is only a relevant consideration in job-filling by the Board where candidates’ “qualifications and ability are substantially equal.”[4] Inasmuch as all parties agree that equality of qualifications was never a position taken by the Board—either in arbitration or before this Court—the matter of Ms. Makiewicz’s relative seniority and the defendants’ misapprehension of same is of no moment.
Plaintiff points to statements by a union co-worker that she was denied promotion because she had “attendance issues” and because she “took FMLA time to take care of her father.” Plaintiff, however, provides no sworn testimony from this declarant; nor does she furnish any basis for finding these hearsay statements to be anything other than uninformed conjecture by a worker who played no role in the subject decisions of the Board.
Finally, plaintiff points to the probable cause finding of the MCAD, to the effect that it believed the evidence presented would permit a finding of handicap bias against the Board.
During the Court’s motion hearing, counsel for the plaintiff—who had only very recently entered an appearance in the case—suggested that he hoped to be able to adduce additional evidence to present to the jury at trial. That said, however, counsel acknowledged that he understood that discovery in the case had concluded, and that no party had filed any request under Mass.R.Civ.P. 56(f) to defer consideration of the defendants’ dispositive motion.
Discussion
This Court grants summary judgment where there are no genuine issues of material fact, and where the record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550,553 (1976).The moving party bears the burden of establishing that there is no dispute of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a genuine dispute of material fact for trial either by submitting affirmative evidence negating an essential element of the non-moving party’s case, or by showing that the non-moving party has no reasonable expectation of proving an essential element of its case at trial. Fiesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Once the moving party establishes the absence of a triable issue by either of these methods, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute. Pederson v. Time, 404 Mass. 14, 17 (1989). The opposing party may not rest on the allegations of her pleadings; nor may she rely on “bare assertions and conclusions regarding [her own] understandings, beliefs, and assumptions.” Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989). Mere contradictions of factual allegations, without evidentiary support, are insufficient to raise questions of material fact sufficient to defeat a summary judgment motion. See Madsen v. Erwin, 395 Mass. 715, 721 (1985), quoting Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3rd Cir. 1972) (noting that conclusoiy statements, denials, and allegations are insufficient to raise material issues of fact). The non-movant’s obligation, rather, is to demonstrate the existence of admissible evidence sufficient to meet her burden of proof on the issues raised by the motion.
In deciding motions for summary judgment, the Court may consider pleadings, depositions, answers to interrogatories, admissions on file and affidavits. The Court reviews the evidence in the light most favorable to the nonmoving party, but is not required to indulge unproven speculation, unwarranted inferences or conclusoiy generalizations. Cataldo Ambulance Serv., Inc. v. Chelsea, 426 Mass. 383,388 (1998).
To make out a viable claim of disability discrimination under Chapter 15IB, and to survive the instant motion for summaiy judgment, plaintiff bears the burden of coming forward with evidence sufficient to permit a reasonable inference that handicap bias more likely than not motivated the Board in its promotion decisions. See, e.g., Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 7 (1998); Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997). Although issues of motivation are often best reserved for decision by the jury, this Court has long recognized that summary judgment may be appropriate in an employment dis *451 crimination case in which the evidence of record makes clear that plaintiff will not be able to sustain her burden of proof at trial. See Brunner v. Stone & Webster Corp., 413 Mass. 698, 705 (1992). This is such a case.
Even taking the evidence in the light most favorable to the plaintiff, and crediting every reasonable and non-speculative inference that might support her claim, this Court concludes that no jury could fairly find that the Board more likely than not selected Peter Wong and Mary Carroll for upgraded positions that were denied to Ms. Mickiewicz on the basis of her disability. To the contrary, the very evidence relied upon by the plaintiff and included in her Rule 9A(b){5) Statement, reasonably construed, reinforces the conclusion that Mr. Wong and Ms. Carroll were promoted to these roles on the basis of then-superior qualifications and experience.
The majority of plaintiffs protests against the promotion decisions made in this case relate to procedural foot-faults committed by the Board under its union contract. Plaintiffs Opposition to the defendants’ motion thus places great emphasis on the fact that the Board initially failed to post the jobs in the manner required by its collective bargaining agreement with SEIU, Local 888, and then took positions in arbitration defending its decisions that were ultimately rejected by the Arbitrator. Included within this category of evidence are the Board’s characterization of its actions as “reclassifications” and its errant reference to a view that Ms. Mickiewicz had less seniority than Mr. Wong and Ms. Carroll. But while the Board was obviously unsuccessful in defending the contractual correctness of its actions in arbitration, there is no evidence to suggest that its procedural lapses were in the nature of deliberate deceptions or otherwise reflected a handicap-related bias against Ms. Mickie-wicz. To the contrary, the Arbitrator took pains to point out that the Board’s treatment of its actions as reclas-sifications was consistent -with what many public sector collective bargaining agreements provide; and the mistaken belief that Ms. Mickiewicz had less seniority than the successful candidates for the posted positions likewise appears to have been the product of a misreading of the contract’s requirement of “continuous” rather than cumulative service. (In all events, the matter of seniority was entirely immaterial to the Board’s decisions in this matter, all parties conceding that the perception that Mr. Wong and Ms. Carroll possessed greater experience and ability for the positions than plaintiff drove the ultimate decisions.) Accordingly, the fact that plaintiff succeeded in her procedure-based arbitral challenge to the Board’s actions in its initial assignment of job upgrades to Mr. Wong and Ms. Carroll adds nothing to Ms. Mickiewicz’s claim that she was subsequently denied promotion to these positions on the basis of her disability.
To be sure, the plaintiff—conceding as she has that Mr. Wong and Ms. Carroll possessed greater experience in the roles they sought once the positions were properly posted—may feel aggrieved that such experience was unfairly acquired by reason of the Board’s procedural errors in assigning them to these roles in the first place. But these were matters for Ms. Mickiewicz and her union to address in grievance arbitration. She could have sought a ruling from the Arbitrator declaring that, Mr. Wong and Ms. Carroll having obtained much of their experience in the upgraded positions on account of a contract violation, such experience may not form any part of the basis for the Board’s selection decision once the jobs are duly posted. Or, failing that, Ms. Mickiewicz could have elected to bring a new grievance to arbitration following the Board’s selection of Mr. Wong and Ms. Carroll for the new positions (assailing such decisions as the fruit of a procedurally poisoned tree). She evidently did neither of these things, and likewise lodged no protest over the length of time it took the Board to carry out the required job postings (an objection Ms. Mickiewicz appears to make for the first time in court). Regardless, however, this Court does not regard such issues as in any way material to the plaintiffs discrimination claim. Whether right or wrong (or fair or unfair) as a contractual matter, the Board’s decisions to award the position upgrades to Mr. Wong and Ms. Carroll were made on the basis of their superior experience. The plaintiff does not even dispute this, a concession that would without more seem fatal to her claim of handicap bias.
Plaintiff next points to statements from a union coworker, who alleged that Ms. Mickiewicz had been denied the promotions she sought on account of “attendance issues” and because she had taken “FMLA time to take care of [her] father.” These statements, however, are not even adverted to in the parties’ Rule 9A(b)(5) Statement,[5] and they are in all events totem pole hearsay. Ms. Mickiewicz’s first Charge to the MCAD is itself hearsay, and the statements attributed to her co-worker within that document are likewise hearsay—offered objectionably for the truth of the matter asserted therein (viz., the reasons plaintiff was not selected for promotion). Inadmissible hearsay as they are, these statements are entitled to no consideration in connection with the defendants’ Motion for Summary Judgment. See Nile v. Nile, 432 Mass. 390, 402 (2000) (inadmissible hearsay cannot create factual issue); Flesner v. Technical Communications Corp., 410 Mass. 805, 817 (1990) (holding claim supported by hearsay insufficient to survive summary judgment).[6]
Plaintiff repeatedly points to the finding of probable cause issued by the MCAD as evidence of handicap discrimination against the Board. The preliminary pronouncements of this investigating agency, however, represent inadmissible hearsay whose probative value is significantly outweighed by the risk of unfair prejudice. Its findings are thus lypically excluded from evidence at trial. See, e.g., Kimball, Bennett v. McGahan, 16 Mass. L. Rptr. 562 (2003) (“One cannot fairly interpret the Mas *452 sachusetts anti-discrimination statute, G.L.c. 151B, as showing an intent by the Legislature that the courts admit and accord prima facie evidentiary weight to MCAD decisions during jury trials sought by respondents”) (excluding findings); Flebotte v. Dow Jones & Co., 2001 U.S.Dist. LEXIS 26200, at *2 (D.Mass. 2001) (“An admission of either of these two MCAD findings, which essentially tell the jury that there is probable cause for concluding that the plaintiffs have met their burden of proof, carries a substantial danger of unduly influencing the jury”) (excluding probable cause determinations from evidence). For this reason, the MCAD’s probable cause finding in respect to the plaintiffs administrative charge cannot sustain her claim of discrimination against an otherwise well-supported motion for summary judgment.
At the end of the day, the only items of admissible evidence cited by plaintiff that are in any way at all probative of her claim of handicap discrimination are the recurring inquiries from Jean Lorizio (over a two-year period between 2004 and 2006) as to whether she needed help getting her work done.[7] Although plaintiff admits (see Paragraph 31 of the parties’ Rule 9A(b)(5) Statement) that Ms. Lorizio with some frequency observed that Ms. Mickiewicz was not getting her work done, plaintiff nevertheless asserts that she found such inquiries patronizing and demeaning to her. But merely because Ms. Mickiewicz subjectively found her manager’s offers of assistance to be offensive does not perforce mean that they were in fact so. After all, plaintiff forthrightly acknowledges Ms. Lorizio’s perception that work for which she was responsible was not getting done in a timely manner.[8] In these circumstances, Ms. Lorizio’s occasional inquiries and offers of assistance cannot reasonably be construed as anything nefarious or suggestive of handicap bias. Ms. Mickiewicz may well have drawn the implication that offers of help from a manager meant she was considered less than fully competent in her job. But, without more, such an inference seems a good deal less plausible (indeed, unreasonable) than the fact that Ms. Lorizio was simply trying to be helpful to an employee whose acknowledged physical limitations required frequent accommodation. Reinforcing this conclusion is the plaintiffs own testimony, in which Ms. Mickiewicz repeatedly acknowledged the long-standing efforts the Board had made to accommodate her disability. See, e.g., Affidavit of Nancy Mickiewicz at 9 (‘The Board and my co-workers have always acknowledged my disabil-. ity, and the Board has provided me with reasonable accommodations to deal with it”). These efforts of the Board included arranging for a co-worker to cany heavy files for Ms. Mickiewicz, and rearranging Ms. Mickiewicz’s work and lunch schedule to allow her to attend three-days-a-week dialysis sessions away from the office. In these circumstances, the evidence permits no reasonable inference that Ms. Lorizio’s offers of job assistance to the plaintiff—something handicap discrimination law generally approves and occasionally requires employers to do as a form of reasonable accommodation, see Russell v. Cooley Dickinson Hospital, 437 Mass. 443, 457 (2002)—reflects a disability-based bias against Ms. Mickiewicz rendering it more likely than not that her non-selection for promotion was the product of invidious discrimination.
In sum, all of the undisputed evidence of record, reasonably construed, belies the allegation of handicap discrimination the plaintiff makes in this case. The evidence shows that the Board selected two employees for job upgrades because these employees already had years of applicable experience performing the jobs’ constituent functions. There is no probative evidence that plaintiffs disability—which the Board knew about when it hired Ms. Mickiewicz and did much to accommodate during her tenure—played any part in this decision. For these reasons, summary judgment must enter against Count I of the Verified Complaint.
Turning to the plaintiffs claim for intentional infliction of emotional distress, the law is well settled in Massachusetts that such claims for personal injury as arise during the course and within the scope of employment are barred by the exclusivity provision of the Workers’Compensation Act, G.L.c. 152, §24. See Foley v. Polaroid Corp., 381 Mass. 545, 548 (1980); Fusaro v. Blakely, 40 Mass.App.Ct. 123 (1996). The plaintiffs asserted cause of action for intentional infliction of emotional distress is undeniably such a claim, and must therefore be dismissed.
Conclusion and Order
For all of the foregoing reasons, and in accordance with the dictates of Mass.R.Civ.P. 56, the defendants’ Motion for Summary Judgment against the Verified Complaint is Allowed.

The Verified Complaint’s third and final count asserted a claim for injunctive relief that the plaintiff has since voluntarily withdrawn as moot.

he decision of the Arbitrator did not reach Ms. Mickiewicz’s contention that she had been discriminated against on account of her disability, and instead addressed itself exclusively to the claim that the Board had violated the job-bidding requirements of the collective bargaining agreement. In ruling in favor of the union, therefore, the Arbitrator did not find that Ms. Mickiewicz had been the victim of anything other than a procedural violation of the contract, having been denied the opportunity to bid for promotions that were awarded to other employees outside of the required posting process. In his Decision and Award, the Arbitrator corrected the Board’s evident misapprehension that Ms. Mic-kiewicz had less seniority than the two employees who had been awarded position adjustments and raises, and rejected the argument that these actions were merely “reclassifica-tions” of existing jobs to which no contractual posting obligation attached. Importantly, however, the Arbitrator in no way suggested that Ms. Mickiewicz was the most qualified aspirant for the job, and for this reason simply ordered the Board to post the two new positions in accordance with the requirements of the union contract.

There is some ambiguity as to whether plaintiffs Rule 9A(b)(5) admission in this connection was intended to concede the fact of her recurring problem with untimely work, or merely that this was the perception of Ms. Lorizio. But in *453 respect to a claim in which Ms. Lorizio’s state of mind (rather than the objective reality) is in issue, the Court finds there to be no material difference for purposes of summary judgment.

N'his appears to be the reason Arbitrator Ryan corrected the misstatement of Ms. Mickiewicz’s seniority. Looking ahead to the possibility that the Board might find Ms. Mickiewicz’s qualifications substantially equal to other employees who might apply for the jobs once they were properly posted, the Arbitrator evidently sought to ensure that Ms. Mickiewicz would be credited with her correct (and potentially outcome-determinative) seniority. The correction, however, was not material to any aspect of the Arbitrator’s actual ruling.

They appear only in the plaintiffs initial Charge to the MCAD.

That the statements are ascribed to a co-worker not authorized to speak for the Board and with no apparent connection to its promotion-related decision making further disqualifies the statements as incompetent speculation. See Samuels v. Brooks, 25 Mass.App.Ct. 421, 429 (1988) (inadmissible assertions from persons not competent to testify may be disregarded on summary judgment). Moreover, one of the two statements—concerning Ms. Mickiewicz’s FMLA leave-taking to care for her father—is not even probative of handicap bias at all.

Plaintiffs testimony was to the effect that Jean Lorizio asked her if she needed help and tendered the support of Mary Carroll some seven times between 2004 and 2006. This would indicate that Ms. Lorizio made one such inquiry every three or four months.

Even if Ms. Lorizio was in error in this perception, Chapter 15 IB imposes no requirement that an employer be “correct in its belief” regarding an employee’s job conduct to avoid an inference of discrimination. See, e.g., Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997).