DAVID M. ELWOOD & another *vs.* STATE TAX COMMISSION.

Suffolk.   November 5, 1975. — December 9, 1975.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & KAPLAN, JJ.

*Taxation,* Income tax.   *Words,* "Other compensation."

Income received by a husband in 1971 as a member of a law partner-
    ship qualified as "salary, wages or other compensation" under
    § 5B (*a*) (2) (*i*) of G. L. c. 62, as appearing in St. 1971, c. 555,
    § 5, and upon filing a joint return with his wife, who also received
    a qualifying amount as an employee of an enterprise, the taxpayers
    were entitled to the exemption of $2,000 in addition to the $2,600
    exemption.   [194-199]

APPEAL from a decision of the Appellate Tax Board.

*Frederick D. Herberich* (*Pamela A. Duckworth* with him) for the taxpayers.

*Peter J. Murphy,* Special Assistant Attorney General, for the State Tax Commission.

KAPLAN, J.   In 1971 David M. and Carol J. Elwood were husband and wife residing together in the Commonwealth.   During that year both received income, Mr. Elwood as a member of a law partnership and Mrs. Elwood as an employee of an enterprise unspecified on this record.

On their joint State income tax return for 1971, these taxpayers claimed a personal exemption in the amount of $4,600 under § 5B (*a*) (2) (*i*) of G. L. c. 62, as appearing in St. 1971, c. 555, § 5, reading as follows:   "(*a*) The following exemptions shall be allowable to individuals against the income subject to taxation under subsection (*b*) of section four: — . . . (2) In the case of a husband and wife filing a joint return, (*i*) a personal exemption of two thousand six hundred dollars and an amount, not exceeding two thousand dollars, equal to the salary, wages or other compensation subject to taxation under subsection (*b*) of section four of the spouse having the smaller amount of such income . . . ."   To the $2,600 exemption the taxpayers were plainly entitled; they claimed the additional exemption of $2,000 on the ground that each had earned more than that amount as "salary, wages or other compensation" as described.

The Department of Corporations and Taxation disallowed the $2,000 exemption and accordingly assessed an additional tax of $100 plus interest of $8.67.   Having paid the assessment, the taxpayers filed an application for its abatement which was disallowed by the State Tax Commission.   Upon a petition under the formal procedure, the Appellate Tax Board held for the State Tax Commission.   The taxpayers filed their appeal to this court under G. L. c. 58A, § 13, without awaiting findings of fact and report by the Board.   Thus we have to consider whether there was error of law on the record.   Cf. *Assessors of Kingston* v. *Sgarzi*, 367 Mass. 840 (1975).

There is no doubt that the income of the husband as well as the wife was "subject to taxation under" § 4 (*b*), for the § 4 (*b*) items were broadly embracing:   they in-

cluded earned income and all other income except dividends, capital gains, and certain interest.[1] The precise question, however, on which the Department ruled negatively, was whether the husband's income, like the wife's, qualified as "salary, wages or other compensation." As will be seen below, this question could have significance only as to the years 1971 and 1972 when G. L. c. 62, § 5B (a) (2) (i), as brought in by St. 1971, c. 555, § 5, was in force. Statute 1973, c. 723, § 2, further amending c. 62, resolves the particular issue for later years.

There is no specific "statutory history" of § 5B (a) (2) (i) to assist us in the quest for meaning, nor are there administrative regulations or explanations bearing on the question. As a linguistic matter, looking at "compensation" apart from "salary" and "wages," we can readily conclude that fees paid by a client to a lawyer engaged by him are "compensation" to the lawyer (which for the purpose would not lose their character as such when they were reduced to net profit, see *Barnes* v. *State Tax Comm'n*, 363 Mass. 589 [1973]). Thus counsel point out that lawyer's fees are spoken of as "compensation" in G. L. c. 277, § 55 (reasonable compensation for assigned counsel), as are allowances to executors, administrators, guardians, conservators, or trustees in G. L. c. 206, § 16 (compensation for services); and see similar casual usages as to lawyer's fees in *Commonwealth* v. *Nassar*, 354 Mass. 249, 266 (1968); *Grady* v. *Treasurer of the County of Worcester*, 352 Mass. 702, 703 (1967). But in the collocation "salary, wages or other compensation" the word "compensation" appears as the genus of which "salary" and "wages" are species, and it is reasonable to assume that one or more characteristics of the species serve to limit or define the genus. Both sides appeal to the maxim ejusdem generis: the State Tax Commission says that the bearing of "salary" and "wages" upon "other

---

[1] See §§ 2 (a) and (b), 3, and 4 (b) of G. L. c. 62, as appearing in St. 1971, c. 555, § 5.

compensation" is to limit "compensation" to that received by the person as an employee from an employer; whereas the taxpayers say that the effect is to limit "compensation" to that received for personal services, whether rendered by an employee or by a self-employed person.

It is one objection to the view of the State Tax Commission that the expression "other compensation" would then be little broader, if broader at all, than the preceding words; it might serve merely as a reminder of the obvious point that "salary" or "wages" may remain such for a tax purpose even if, as between the parties, they are called something else, e.g., commissions.[2]  It is another possible objection that "salary" does not always carry with it the idea of an employee-employer relationship: thus we are told that a public official may be spoken of as earning a "salary" (*Eisenstadt* v. *County of Suffolk,* 331 Mass. 570 [1954]) though he is not regarded as an "employee." *Attorney Gen.* v. *Tillinghast,* 203 Mass. 539 (1909).  On the other hand, it can be urged against the taxpayers' reading of "other compensation" that it does not take enough coloration from the preceding "salary" and "wages," and that the suggested stopping place at personal services is artificial, contrived to avoid the extreme position that "compensation" covers income from any trade or business.

Other attempts at exegesis are not conclusive either way.  There is argument that the language in question resembles and therefore derives from the Federal provisions for withholdings from employees' wages,[3] which if true might work in favor of the State Tax Commission; but this is denied and it is contended with some force that the language resembles and may have been taken

---

[2] Cf. I.R.S. Regulations § 31.3401 (a)-1, defining "wages" for withholding purposes under the Federal Internal Revenue Code of 1954 § 3401 (a).

[3] See references in n.2 above.

from Federal code verbiage about earned income,[4] which inclines to the taxpayers' advantage. The point is also made`that when the draftsmen of State legislation wanted to describe income from employment, as they did at another place in the law,[5] they chose apt words which they could have used as well in § 5B (*a*) (2) (*i*) if their purpose there had been the same.

Again, the State Tax Commission posits as the rationale of the exemption up to $2,000 that it was intended to equate or more nearly balance the positions of an employee and a self-employed person, the exemption accorded the employee serving to match the deductions of the various business expenses allowed to the self-employed. But this would hardly be a scientific way to achieve a balance; besides, the supposed inequality may not exist to begin with, since employees characteristically do not themselves incur those expenses, and they are, in fact, favored for tax purpose in some ways not open to the self-employed.[6] As for any suggestion that the exemption is designed to help to get the chores done in the home of a working couple, this would not lead to a distinction between employed and self-employed spouses.

Up to this point in our discussion the result is in some doubt, but we think that, when St. 1971, c. 555, § 5, is considered in historical perspective, the taxpayers' thesis appears the stronger, and overcomes an inclination to construe an exemption narrowly. For the years before 1971, husbands and wives filing joint returns were entitled to the predecessor exemption as to "the total busi-

---

[4] See Int. Rev. Code of 1954, § 911 (b) (defining earned income with respect to exemption of such income from foreign sources).

[5] See G. L. c. 62B, § 1, referring to "wages" as defined in § 3401 (a) of the Federal Code.

[6] The taxpayers point to a number of such tax benefits available to employees but not the self-employed, e.g., employees are not taxed on premiums paid by employers for various forms of insurance in favor of employees.

ness income subject to taxation under this chapter," which included (among other things) their earnings whether from employment or self-employment.[7] As is well known, the State income tax statute was rewritten, with effect for the year 1971, to tie in more closely with the Federal code. See *Ingraham* v. *State Tax Comm'n*, 368 Mass. 242, 244-245 (1975). This was accomplished hurriedly, as noted in *Barnes* v. *State Tax Comm'n, supra* at 593, and the doubt created by the wording of § 5B (*a*) (2) (*i*) effective for 1971 was only one of a number generated by the new law. Statute 1973, c. 723, was in part curative. Under present G. L. c. 62, § 3B (*b*) (2) (A), as brought in by the 1973 statute and effective commencing in 1973, spouses filing joint returns are entitled to the cognate exemption as to "earned income included in Part B gross income," with an explicit definition of earned income as meaning "salary, wages, other employee compensation, self-employment income," and so forth.[8] We

---

[7] Section 5B of G. L. c. 62, as before amendment by St. 1971, c. 555, read as follows: "The following exemptions shall be allowable to individuals against the business income subject to taxation under subsection (*b*) of section five and under section five A: . . . (2) In the case of a husband or wife filing a joint return, (*i*) a personal exemption of two thousand dollars and an amount equal to the total business income subject to taxation under this chapter of the spouse having the smaller such income, or four thousand dollars, whichever is less . . . ." (St. 1966, c. 698, § 9.)

[8] Section 3B (*b*) (2) (A) of G. L. c. 62, as appearing in St. 1973, c. 723, § 2, reads as follows: "In determining the Part B taxable income, the Part B adjusted gross income shall be reduced by the following deductions and exemptions: . . . (*b*) The following exemptions shall be allowable to individuals against the Part B income: . . . (2) In the case of a husband and wife filing a joint return, (A) a personal exemption of two thousand dollars and an amount, not exceeding two thousand dollars, equal to the earned income included in Part B gross income of the spouse having the smaller amount of such income; and an additional exemption of six hundred dollars for the spouse having the smaller amount of such income, provided that the total of such income of such spouse for the calendar year in which the taxable year of the taxpayer began did not exceed two thousand

think this is a situation where (reversing the familiar quotation) the later event casts its shadow behind; the 1973 law can be taken as declaratory of the meaning of the earlier law, showing that there was no design in 1971 to create the distinction between employees and self-employed persons for which the State Tax Commission now contends.

Our decision eliminates what would otherwise be an odd interregnum in the law, probably unintended and at least not carefully deliberated, and thereby promotes some measure of continuity as far as the critical language of the statute permits. But it may open up questions in particular situations about what was or was not personal service.

The decision of the Appellate Tax Board is reversed and the assessment of additional tax will be abated.

*So ordered.*

---

dollars. 'Earned income', as used herein, shall mean salary, wages, other employee compensation, self-employment income and any amount received as a pension or annuity to the extent includable in earned income as defined under section nine hundred and eleven (*b*) of the Code. . . ."