J. D'Amico, Inc. *vs.* City of Worcester & others.[1]

Norfolk. November 8, 1984. — December 26, 1984.

Present: Grant, Kaplan, & Kass, JJ.

*Public Works*, Bidding procedure. *Contract*, Bidding for contract.

Failure of a general bidder on a municipal sewer contract to make a bid deposit in the amount of five percent of the value of the proposed work, as estimated by the awarding authority, was a material deviation from the bidding procedures mandated by G. L. c. 30, § 39M, and required rejection of the bid as unresponsive, where the bidder had instead calculated five percent of its bid and, as a result, had deposited $71,516.50 less than the statute required. [115-116]

Civil action commenced in the Superior Court Department on December 23, 1983.

The case was heard by *Edith W. Fine*, J.

*Charles B. Swartwood, III*, for A. Amorello & Sons, Inc.

*Malcolm L. Burdine*, Assistant City Solicitor, for the city of Worcester.

*Stephen R. Follansbee* (*Tanous J. Thomas* with him) for the plaintiff.

Kass, J. Although the parties were insistent at oral argument that the question they pose regarding the application of G. L. c. 30, § 39M, perplexes and concerns the construction industry and public bidding authorities, we think there is less to the problem than meets the eye. The failure of the appellant, A. Amorello & Sons, Inc. (Amorello), as a bidder for a general contract to build a sewer interceptor, to make a bid deposit "in an amount not less than five percent *of the value of the*

---

[1] A. Amorello & Sons, Inc., and the Department of Labor and Industries.

*proposed work, as estimated by the awarding authority*"[2] was a material deviation from bidding procedures which required the city of Worcester to reject Amorello's bid as nonresponsive. Undeniably, there was considerable confusion among bidders as to the proper amount of the bid deposit, but that confusion says more about assumptions which the bidders made than it does about any mystery inherent in the statute.

The city received thirteen bids from prospective general contractors for construction of the Northwest Interceptor, Contract No. 18A (the Project). Methuen Construction Co., the lowest bidder, was permitted to withdraw for the reason that it had made a clerical error, leaving Amorello, the defendant-appellant, as the low bidder at $2,369,670. The runner up was J. D'Amico, Inc. (D'Amico), the plaintiff-appellee, at $2,395,995. Amorello furnished a bid deposit of $118,483.50, which was five percent of the value of its bid, but lower by $71,516.50 than five percent of the value of the work as estimated by the city. The city's estimate of the value of the Project was $3,800,000, although the Dodge Report, a trade journal in the construction industry, had published an early city estimate (corrected in a later issue) of $2,000,000. According to Amorello, and the other parties do not dispute it, eight bidders submitted bid deposits that were five percent of their respective bids; five bidders posted bid deposits that were five percent of the estimate cost of the Project by the city's engineer.

Those who made the smaller bid deposits apparently were accustomed to bidding on public *building* projects, as to which the bidding process is governed by G. L. c. 149, §§ 44A through 44I, inclusive, as appearing in St. 1980, c. 579, § 55. The amount of the bid deposit called for in G. L. c. 149, § 44B(2), is "five percent of the value of the bid." Bidding for public works projects, e.g., projects involving roads, bridges, or sewerage facilities, but not *buildings*, is governed by G. L. c. 30, § 39M. The distinction between public building

---

[2] The quoted material is from the third sentence of G. L. c. 30, § 39M(*a*), as appearing in St. 1976, c. 506, § 2. The italics have been added.

projects and public works which are not buildings must be recognized to reconcile G. L. c. 30, § 39M, and G. L. c. 149, §§ 44A-44I, and has been acknowledged in the cases. See *James Constr. Co.* v. *Commissioner of Pub. Health,* 336 Mass. 143, 147 (1957); *Deary* v. *Dudley,* 343 Mass. 192, 194 (1961); *Modern Continental Constr. Co.* v. *Lowell,* 391 Mass. 829, 834 n.8, 838-840 (1984);[3] *J.J. & V. Constr. Corp.* v. *Commissioner of Pub. Works of Fall River,* 5 Mass. App. Ct. 391, 392 (1977). The bid deposit required by the third sentence of G. L. c. 30, § 39M(*a*), is "five percent of the value of the proposed work, *as estimated by the awarding authority . . ."* (emphasis supplied).

All parties acknowledge that the Worcester Northwest Interceptor job was a nonbuilding public work governed by G. L. c. 30, § 39M. D'Amico, the second lowest bidder, demanded that the bid of Amorello be set aside as not in compliance with § 39M, and protested to the Department of Labor and Industries (DOLI). That agency has power to investigate if there has been a violation of § 39M and to institute proceedings in Superior Court to enjoin the award of a contract, if it finds noncompliance. See G. L. c. 149, § 44H, and *Department of Labor & Indus.* v. *Boston Water & Sewer Commn.,* 18 Mass. App. Ct. 621, 623 n.7 (1984). After hearing, DOLI concluded that Amorello's failure to make the correct bid deposit constituted but a minor and formal deviation from bidding procedure because the bid deposit made adequately protected the city.[4] DOLI determined Amorello's bid to be responsive

---

[3] The *Modern Continental* case noted the establishment, by St. 1980, c. 579, of the division of Capital Planning and Operations to oversee certain planning and building projects within the Commonwealth. The same act of the Legislature reflected a comprehensive revision of G. L. c. 149, §§ 44A-44I. That 1980 legislation did nothing to eradicate the public building - public works distinction, one which presents a problem, when, as in *Modern Continental,* the public work includes buildings. The court's opinion, at 834 n.8, discusses criteria suggested by the Division and the Attorney General for determining whether public works or public buildings procedures should apply.

[4] DOLI's reasoning in this regard was that G. L. c. 149, § 44B(3), required the forfeiture from the deposit of only the amount between the bid withdrawn

and rejected D'Amico's protest. D'Amico brought a complaint asking that it be declared the lowest qualified bidder. A Superior Court judge concluded that the bidding irregularity was not minor or formal, but substantial, declared D'Amico the lowest qualified bidder, and enjoined award of a contract to Amorello on the basis of the bids received.

However appealing an award to Amorello might be as a matter of practical sense, the judge was plainly right. The "minor or formal deviation" exception to compliance with competitive bidding statutes does not generally apply to failure by a bidder to comply with a statutory requirement. See *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 691-692 (1982).[5] So, for example, the decision in *Gil-Bern Constr. Corp.* v. *Brockton,* 353 Mass. 503, 505-506 (1968), involved a failure to supply a graphic representation of a construction progress schedule as called for by the bidding documents. The court thought the deviation was inconsequential because it did not alter the bidder's obligation to finish the work by a certain date, and because such a graphic schedule was not required by statute. Similarly, in *J. J. & V. Constr. Corp.* v. *Commissioner of Pub. Works of Fall River,* 5 Mass. App. Ct. at 392, a deviation was tolerated from a requirement not prescribed by State or Federal law or regulation. The bid deposit requirement in G. L. c. 30, § 39M, is reasonably precise and palpably different from that which appears in G. L. c. 149, § 44B. In this case, the amount of bid deposit which § 44B requires is 38% (i.e., $71,516.50) less than the amount

and the next lowest bid. The difference between Amorello's bid and D'Amico's bid was $26,325, so, facially, Amorello's bid deposit of $118,483.50 was ample. Whether § 44B(3) governs forfeiture of a bid deposit made under G. L. c. 30, § 39M, is not obvious. Section 39M has nothing to say on the subject.

[5] An exception to the general rule has been countenanced in a narrow category of cases of apparent clerical oversight. See e.g., *Chick's Constr. Co.* v. *Wachusett Reg. High Sch. Dist. Comm.,* 343 Mass. 38, 41 (1961), construing G. L. c. 149, § 44F, as amended by St. 1957, c. 590. The substance of that statute, which dealt with forms of general bids, now appears in G. L. c. 149, § 44E. See also, *Fred C. McLean Heating Supplies, Inc.* v. *School Bldg. Commn.,* 341 Mass. 322, 324 (1960).

§ 39M requires. We may not shut our eyes to it or fob it off as inconsequential. Uniformity between the two statutes might be desirable, but it is not for us to rewrite the statutory scheme. Cf. *Rogers* v. *Metropolitan Dist. Commn.,* 18 Mass. App. Ct. 337, 339 (1984).

As to the argument that Amorello's deviation should be overlooked because the city inadequately informed (we do not so decide) bidders as to its engineer's estimate of the cost of the work, the answer appears in *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.,* 387 Mass. at 693: "[T]he public interest in adherence to statutory bidding procedures overrides any equitable considerations."

*Judgment affirmed.*