CRUZ A. PERLERA & others[1] *vs.* VINING DISPOSAL SERVICE, INC. (and a companion case[2]).

Nos. 97-P-1087 & 97-P-1728.

Middlesex. Suffolk. June 9, 1998. - August 3, 1999.

Present: WARNER, C.J., ARMSTRONG, & PORADA, JJ.

*Municipal Corporations,* Contracts, Refuse collection and disposal. *Labor,* Wages. *Statute,* Construction. *Contract,* Construction of contract. *Words,* "Public works," "Operators."

This court concluded that the term "public works" appearing in G. L. c. 149, § 27F, included municipal refuse collection and disposal [493-496]; that a contract for municipal refuse removal services with an independent contractor was a "lease, rental or other arrangement, [or] order or requisition," within the meaning of the statute [496-498]; and that the operator of a refuse compactor on a rubbish truck was the "operator" of "equipment" in accordance with the plain language of the statute [498]; consequently, claims by such operators for payment of wages at the prevailing wages mandated by the statute were remanded for entry of judgment in their favor [498-499].

CIVIL ACTION commenced in the Superior Court Department on November 7, 1995.

The case was heard by *Hiller B. Zobel,* J., on motions for summary judgment.

CIVIL ACTION commenced in the Superior Court Department on February 14, 1996.

The case was heard by *Thayer Fremont-Smith,* J., on a motion for summary judgment.

*Elizabeth A. Sloane* for Cruz A. Perlera & others.

*Kenneth H. Tatarian* for Vining Disposal Service, Inc., & another.

[1] Rene D. Landaverde, Tito S. Perlera, and Carlos H.P. Portillo.

[2] Attorney General *vs.* Town of Burlington and Vining Disposal Service, Inc.

*Luz A. Arevalo*, Assistant Attorney General, for the Attorney General.

*Scott Harshbarger*, Attorney General, *Luz A. Arevalo*, Assistant Attorney General, & *Linda M. Hamel* for the Attorney General & another, amici curiae, submitted a brief.

ARMSTRONG, J.: The issue in these appeals is whether G. L. c. 149, § 27F, set out below at note 5, requires a private company, under contract with a municipality to provide refuse collection and disposal services, to pay wages at "prevailing rates" (as determined by the Commissioner of Labor and Workforce Development[3] [commissioner]) to the trash collectors who load and operate the compacting machinery at the backs of typical trash trucks. The cases arise out of contracts held by the defendant Vining Disposal Service, Inc. (Vining), to provide trash collection services to a number of municipalities, including the defendant town of Burlington.

In 97-P-1087, the plaintiffs are nondriver employees of Vining whose work includes collecting the trash, dumping it into the hopper at the back of the trash trucks, and activating the compacting equipment. Known as "shakers" due to the nature of their work, they claim that Vining unlawfully paid them wages at less than the prevailing rates mandated by the statute. A judge of the Superior Court entered summary judgment for Vining, reasoning that the plaintiff "shakers" were not "operators" of "equipment" under section 27F because "equipment" refers only to automotive items and "operators" refers only to persons controlling the direction and speed of such items, that is to say, the drivers. The plaintiffs appealed.

In 97-P-1728, the plaintiff is the Attorney General,[4] who sought a declaratory judgment under G. L. c. 231A and G. L. c. 214, § 1, that Vining's contract with the town of Burlington is governed by section 27F and is therefore void for failing to contain a copy of the applicable prevailing wage rate schedule. Another judge of the Superior Court ruled (contrary to the judge in the shakers' action) that section 27F was applicable to the shakers, but that the contract was not void because it

---

[3]By St. 1996, c. 151, § 366, the Department of Labor and Industries became known as the Department of Labor and Workforce Development.

[4]The Department of Labor and Workforce Development (department), see note 3, *supra*, was the agency originally charged with enforcing the statute, but that duty was transferred to the Attorney General by St. 1993, c. 110, §§ 177, 390.

contained a provision incorporating "all terms required to be included by [c]hapter 149," thus satisfying the mandatory "stipulation requiring prescribed rates of wages" under section 27F. Summary judgment was entered ordering Vining to comply with section 27F and pay the prevailing rates. We consolidated Vining's appeal from that judgment with the shakers' appeal.

The dispute centers on the meaning of portions of three phrases in the first sentence of section 27F that determine its scope.[5] One issue concerns the phrase "public works," which Vining contends does not encompass the municipal collection of refuse. Another concerns Vining's assertion that a contract for services is not an "agreement of lease, rental or other arrangement, [or] order or requisition." The final issue — the one deemed pivotal by the judge in the shakers' action — concerns whether the shakers are "operators" of "equipment" as those terms are used in the first sentence of § 27F.

1. *"Public works."* The term "public works" has not been comprehensively defined in our decisional law. See, e.g., G. L. c. 30, §§ 39M-P; G. L. c. 149, §§ 26-27F; *Lee* v. *Lynn*, 223 Mass. 109, 113 (1916); *Andover Consultants, Inc.* v. *Lawrence*, 10 Mass. App. Ct. 156, 158 n.4, 160 (1980); *Modern Continental Constr. Co.* v. *Lowell*, 391 Mass. 829, 831-835, 838-839 (1984); *J. D'Amico, Inc.* v. *Worcester*, 19 Mass. App. Ct. 112, 113-114 (1984); *Thorn Transit Sys. Intl., Ltd.* v. *Massachusetts Bay Transp. Authy.*, 40 Mass. App. Ct. 650, 652-656 (1996). The reason is doubtless that the meaning of the phrase is somewhat

---

[5]The statute, with the disputed phrases italicized, provides in relevant part:

"No *agreement of lease, rental or other arrangement, and no order or requisition* under which a truck or any automotive or other vehicle or equipment is to be engaged in *public works* by the commonwealth or by a county, city, town or district, shall be entered into or given by any public official or public body unless said agreement, order or requisition contains a stipulation requiring prescribed rates of wages, as determined by the commissioner, to be paid to the *operators of said trucks, vehicles or equipment.* Any such agreement, order or requisition which does not contain said stipulation shall be invalid, and no payment shall be made thereunder. Said rates of wages shall be requested of said commissioner by said public official or public body, and shall be furnished by the commissioner in a schedule containing the classifications of jobs, and the rate of wages to be paid for each job."

elastic, expanding or contracting with the statutory context. The core concept of "public works," in Massachusetts and elsewhere, is commonly expressed as involving the creation of public improvements having a nexus to land, such as a building,[6] road, sewerage or waterworks facility, bridge, or park. See *Lee* v. *Lynn, supra; Commonwealth* v. *Daniel O'Connell's Sons, Inc.*, 281 Mass. 402, 403 (1933); *Andover Consultants, Inc.* v. *Lawrence, supra; J. D'Amico, Inc.* v. *Worcester, supra; Carter* v. *City & County of Denver*, 114 Colo. 33, 37-38 (1945); *Demeter Land Co.* v. *Florida Pub. Serv. Co.*, 99 Fla. 954, 963 (1930); *Ellis* v. *Common Council of Grand Rapids*, 123 Mich. 567, 569 (1900); Black's Law Dictionary 1606 (6th ed. 1990); Webster's Third New Intl. Dictionary 1836 (1993). A second category of activities sometimes associated with "public works" includes the work of maintaining or repairing such facilities. See G. L. c. 41, § 69D (by-law may vest town board of public works with power over "maintenance and repair of town buildings and property"); G. L. c. 149, § 27D (painting of public works and public buildings subject to prevailing wage law); *Felix A. Marino Co.* v. *Commissioner of Labor & Indus.*, 426 Mass. 458, 459-461 (1998) (road repairs are "construction of public works" under G. L. c. 149, § 26); *Commonwealth* v. *W. Barrington Co.*, 5 Mass. App. Ct. 416 (1977) (street sweeping contract was for "public works" under G. L. c. 149, § 27F); *Thorn Transit Sys. Intl., Ltd.* v. *Massachusetts Bay Transp. Authy.*, 40 Mass. App. Ct. at 652-656 (upgrade of transit fare collection system is "public work" under G. L. c. 30, § 39M). See also *Gaston* v. *Taylor*, 274 N.Y. 359, 363 (1937) (subway

---

[6]One clear example of the elastic meaning of "public works" arises in the context of the public bidding laws. A public building is not a "public work" for purposes of G. L. c. 30, § 39M, which requires competitive bidding for a contract for "the construction, reconstruction, alteration, remodeling or repair of any public work." Such contracts are instead governed by a separate public bidding statute. See G. L. c. 149, §§ 44A-H; *J. D'Amico, Inc.* v. *Worcester*, 19 Mass. App. Ct. at 113-114, and cases cited.

By contrast, under the prevailing wage laws, a contract for the construction of a public building would seem to involve a "public work." See G. L. c. 149, § 26; § 27B (employer's statement of compliance must identify the "building or project" on which its employees are working); § 27C (referring to "public building or other public works"). See also *Commissioner of Labor & Indus.* v. *Lawrence Hous. Authy.*, 358 Mass. 202, 206-207 (1970); *Thorn Transit Sys. Intl., Ltd.* v. *Massachusetts Bay Transp. Authy.*, 40 Mass. App. Ct. at 654-656 (outside context of public bidding statutes, "public buildings" and "public works" need not be mutually exclusive).

maintenance); *Golden* v. *Joseph*, 307 N.Y. 62, 67-68 (1954) (boiler repair); *Sewer Envtl. Contractors, Inc.* v. *Goldin*, 98 A.D.2d 606, 606 (N.Y. 1983) (sewer cleaning); *Henkels & Mc-Coy, Inc.* v. *Department of Labor & Indus.*, 143 Pa. Commw. Ct. 264, 267-269 (1991) (phone system replacement); *Probst* v. *Menasha*, 245 Wis. 90, 91, 93-94 (1944) (sidewalk repair).

Finally, legislatures have at times used "public works" still more broadly to include activities with no immediate connection to fixed public improvements. See *United States* v. *Irwin*, 316 U.S. 23, 27-30 (1942) (construction of private university library with public funds was "public work" under Miller Act); *Flying Tiger Lines, Inc.* v. *Landy*, 370 F.2d 46, 49 (9th Cir. 1966) (contract between air carrier and United States Air Force to transport military personnel to Vietnam was "public work" contract under Defense Base Act); *Lelande* v. *Lowery*, 26 Cal. 2d 224, 227 (1945) (publication of tax notices under contracts with county was "public work"); *State* v. *Butler*, 178 Mo. 272, 305-317 (1903) (municipal refuse collection is a "public work"). Significant for our purposes is G. L. c. 41, § 69D, which allows a town to create a board of public works, the role of which may under local law include the "collection and disposal of garbage and refuse" — a function that § 69D describes as one "reasonably related to the duties and responsibilities of a board of public works." See *Board of Pub. Works of Wellesley* v. *Selectmen of Wellesley*, 377 Mass. 621, 621-622 (1979) (town board of public works was responsible for refuse disposal). Here, Burlington's superintendent of public works, having a supervisory role over the execution of the contract, has approval authority over changes in the collection schedule, the placement of dumpsters, and special collections. In construing "public works" in section 27F, we give weight to the role of boards of public works with respect to the activity in question. See *Commonwealth* v. *W. Barrington Co.*, 5 Mass. App. Ct. at 419.

The Legislature's broad use of "public works" to include refuse collection and disposal dates at least to the 1953 enactment of G. L. c. 41, § 69D (see St. 1953, c. 101, § 1) and thus preceded and was available to inform the later enactment of § 27F in 1960. See St. 1960, c. 795. We note also that, at least as early as 1975, the department was taking the position that § 27F required it to set prevailing wage levels for nondriver trash collection workers. Although at various times ascribing

the source of its authority to §§ 27B and 27C, sections which Vining argues persuasively are restricted to construction contracts, rather than to § 27F, the department has nevertheless been consistent in asserting that municipal trash collection contract workers must be paid prevailing wages, and, accordingly, has consistently issued wage rate schedules for municipal trash hauling contracts. While we do not give pivotal weight to the department's view, see *Gateley's Case*, 415 Mass. 397, 399 (1993), and cases cited, we agree with its position that the non-driver trash collection workers in these cases are entitled to receive prevailing wages as determined by the department. Here, as in *Commonwealth* v. *W. Barrington Co.*, 5 Mass. App. Ct. at 421, "we see no occasion for invoking the principle that an ambiguous penal statute is to be strictly construed against the Commonwealth."

2. *Service versus rental contract.* We similarly reject Vining's argument that a contract (such as this) for the services of an independent contractor falls outside of section 27F because it is not a "lease, rental or other arrangement, [or] order or requisition." Relying on a decision of only marginal relevance,[7] Vining asserts that because the term "other arrangement" (which alone is broad enough to encompass the instant contract) follows the specific words "lease" and "rental," the former is limited by the doctrine of ejusdem generis to arrangements similar to a lease or rental. That canon of construction is not to be applied mechanistically whenever a string of terms is separated by commas.[8] Cf. *Elwood* v. *State Tax Commn.*, 369 Mass. 193, 195-198 (1975) (read broadly and in context, income from a partnership falls within the ambit of "salary, wages or other compensation"). Rather, it is designed to narrow broad language when the literal meaning of that language does "not fairly come within [a statute's] spirit and intent." *Kenney* v. *Building Commr. of Melrose*, 315 Mass. 291, 295 (1943). Here, we cannot say that the extension of the prevailing wage laws to

---

[7]*Dickson* v. *Riverside Iron Works, Inc.*, 6 Mass. App. Ct. 53, 54-56 (1978). *Dickson* is distinguishable if only for the reason stated in note 8, *infra*.

[8]The doctrine seems most appropriate to a seriatim listing containing numerous terms and ending with the disputed language. See *Santos* v. *Bettencourt*, 40 Mass. App. Ct. 90, 93 (1996) (limiting meaning of building in phrase "place of assembly, theatre, special hall, public hall, factory, workshop, manufacturing establishment or building"). The case for ejusdem generis here is weakened by the fact that only two words precede "other arrangement," which is then followed in close proximity by "order or requisition."

certain service contracts is not fairly intended by a statute which, as we have already decided, similarly expands "public works" for prevailing wage purposes beyond the traditional realm of the construction of fixed improvements.[9] See part 1, *supra*; *Commonwealth* v. *W. Barrington Co.*, 5 Mass. App. Ct. at 419-420.[10]

Vining also relies on the title of the Act creating § 27F — "An act requiring payment of determined wages to operators of trucks and other equipment rented for use on public works," St. 1960, c. 795 — as reflecting that only contracts in the nature of a rental are within its scope. The title cannot here be treated as a reliable interpretive guide to the substantive provisions. Confining the section to rentals would ignore the broader connotation of the terms "order" and "requisition," violating the maxim that "[n]o portion of the statutory language may be deemed superfluous."[11] *Commonwealth* v. *Gove*, 366 Mass. 351, 354 (1974). The bill that culminated in § 27F was at first simply entitled "An act requiring payment of determined wages to operators of trucks and other equipment on public works," with no reference to rentals. See 1960 House Doc. No. 2407. There

---

[9]We find unpersuasive a theory advanced by Vining that the Legislature's purpose in enacting § 27F was to plug a previously existing "gap" in the prevailing wage laws (here, Vining refers to G. L. c. 149, §§ 26-27D) that allowed their circumvention if a government entity "rented" operators and equipment for its own use on public works rather than hired a contractor to perform the same services. This theory has no support in the legislative history and in any event fails to explain the broadening of "public works" in § 27F to endeavors outside of the traditional arena of construction of fixed improvements, as well as the § 27F penalty provisions which are at variance from those in § 27C.

[10]Our reading of the *W. Barrington Co.* opinion convinces us that the contract in that case was for street sweeping services to be "performed by private contractors using their own employees and equipment," and not, as Vining contends, for the mere "rental" of street sweeping machines with operators to be supervised by municipal personnel. See 5 Mass. App. Ct. at 417, 418 n.2, 419.

[11]Vining's stance also assumes that the words "requisition" and "order" can refer only to physical items and not to the provision of services, a position which, according to accepted definitions and statutory usages, is debatable. See G. L. c. 8, § 6; G. L. c. 16, § 4A; G. L. c. 22C, §§ 29-31, 50; G. L. c. 28, § 4B; G. L. c. 37, § 13; G. L. c. 121B, § 11; G. L. c. 254, § 32. See also Webster's Third New International Dictionary 1929, 1588 (1993) (defining "requisition" in part as "act of formally requiring or calling upon someone to perform some action"; defining "order" in part as "a formal written authorization to deliver materials, perform work, or to do both").

were no amendments to the body of the bill prior to its passage, implying that at no point did the bill's meaning change. See 1960 Bulletin of the Committee Work 495. The title of the bill was altered to its final form by the Committee on Bills in the Third Reading (see 1960 Senate Journal 1260), "whose consideration is primarily concerned with draftsmanship rather than substantive policy." *Commonwealth* v. *Kraatz*, 2 Mass. App. Ct. 196, 201 (1974). The recaptioning, under the circumstances, must be regarded as inartful. "In any event the 'title to . . . [a] statute . . . cannot limit its operation to a field more narrow . . . than that established by the statute itself.' " *Commonwealth* v. *Krasner*, 358 Mass. 727, 730 (1971), quoting from *Commonwealth* v. *Tilley*, 306 Mass. 412, 417 (1940).

We also find no support for Vining's position in the fact that the statute applies only when vehicles or equipment are "to be engaged in public works by the commonwealth or by a county, city, town or district." G. L. c. 149, § 27F. Vining argues that this language must mean that the public works are conducted directly "by" the government, i.e., not by independent contracting. It is, however, no less natural to read the preposition "by" as modifying the verb "engaged," so that the focus of the quoted language is the utilization of vehicles or equipment on public works at the behest of the government, whether directly or indirectly.

3. *"Operators" of "equipment."* Contrary to Vining's argument, the reference to the "operator" of "a truck or any automotive or other vehicle or equipment" does not limit the application of § 27F to the drivers of such vehicles. That construction fails to give effect to the word "other," which grammatically modifies both "vehicle" and "equipment." See *Commonwealth* v. *Gove*, 366 Mass. at 354. We are satisfied that a natural reading of "operator" of "other vehicle or equipment" is broad enough to include a shaker as the one who operates the truck's compacting equipment, which is, after all, the business part of the truck's function. This interpretation is not a stretch; it accords with the statute's plain language. See *Green's Case*, 46 Mass. App. Ct. 910, 911 (1999).

4. *Other issues.* Vining makes several technical arguments that we reject. One is that the shakers' action should be dismissed because a jurisdictional prerequisite was not observed,

namely, notice to the Attorney General at least ninety days prior to filing. Another is that, because § 27F is a criminal statute, it was error for the judge in the Attorney General's action to order injunctive relief. See *Commonwealth* v. *Stratton Fin. Co.*, 310 Mass. 469, 472-474 (1941); *Revere* v. *Aucella*, 369 Mass. 138, 146-147 (1975). Section 27F is primarily a remedial statute. The criminal penalty is specified only to encourage compliance with a civil duty. As such, it is properly treated as merely incidental and not as precluding the injunctive relief normally available to enforce legal duties. As the remedy sought in the shakers' action can be given in the Attorney General's action, a dismissal of the shakers' action now would serve no purpose but delay. Both actions are pending in the same court and involve the same issue. They should be consolidated on remand for the entry of a judgment that includes computation of the back wages owed to the shaker plaintiffs.[12]

The judgment in the shakers' action (97-P-1087) is reversed, and the action on remand is to be consolidated with the Attorney General's action (97-P-1728) for further proceedings consistent herewith. The judgment in the Attorney General's action is affirmed but is to be enlarged to afford the relief sought by the plaintiffs in the shakers' action.

*So ordered.*

---

[12]We agree with the judge in the Attorney General's action that the contract was not void under § 27F, because the contract provision incorporating the requirements of chapter 149 necessarily included the prevailing wage stipulation required by that section.